## EX PARTE JOSEPHINE NEWKOSKY.

Argued April 3, 1920—Decided June 7, 1920.

1. The proceedings authorized by the Juvenile Court act (*Supp. Comp. Stat., p.* 464) are not proceedings by way of punishment but by way of reformation, education and parental care, and are intended to save young persons from the ordinary punishment for crime, from the consequences of criminal conduct or of conduct which would justify immediate punishment or immediate restraint.

2. Since the proceedings under the Juvenile Court act do not relate to offences or a conviction in the ordinary sense of the word, the act is not in contravention of the provisions of the state constitution relative to indictment by a grand jury and trial by a traverse jury for criminal offences.

On *habeas corpus.*

Before Justice SWAYZE.

For the writ, *Alexander Simpson.*

Opposed, the *Attorney-General.*

The opinion of the court was delivered by

SWAYZE, J. This case was decided some time ago. Counsel for the petitioner desires to take an appeal, and for that purpose wishes me to state the reasons for my result.

The proceeding brought in question the Juvenile Court act. *Supp. Comp. Stat., p.* 464. It is insisted that the petitioner is illegally held by the authorities of the State Home for Girls because the proceedings were not according to the usual course of criminal law, and because regarded as a summary proceeding there was no proper conviction. The main question has been thoroughly considered in the leading case of *Commonwealth* v. *Fisher,* 213 *Pa. St.* 48; 5 *Am. & Eng. Ann. Cas.* 92. The proceedings authorized by the Juvenile Court act are not proceedings by way of punishment but by way of reformation. education and parental care. The act makes it clear that the proceedings are intended to save young persons from the ordinary punishment for crime, from the consequences of criminal conduct or of conduct which would justify immediate punishment or immediate restraint. Children and minors are necessarily more restricted in their liberty of action than adults, and I see no reason why children under the age of sixteen years should not in proper cases receive such restraint and care from the public authorities as ordinarily they ought to receive from their parents. The act in this view is an attempt to substitute public control for

parental control. This was permissible under the English law long before our Revolution. It was permissible, in the time of Lord Mansfield, for the Court of Kings Bench to intervene for the protection of minors and the jurisdiction of the Court of Chancery in cases of this character acting as *parens patriæ* is well known. A striking case in the Court of Kings Bench is *Rex* v. *Delaval, 3 Burr.* 1434, where a young woman had been apprenticed to a singer to learn music and had been transferred by him to a man of rank and station for purposes of prostitution, to which the young woman seems to have consented. Lord Mansfield had no difficulty in taking control of the case by *habeas corpus.* Within the last thirty years a similar question was presented in the Court of Appeals on the Chancery side where the real controversy was between a mother and a person with whom the child lived and by whom she was cared for. There was no fault on the part of the mother, but the court assumed to act as *parens patriæ* and dealt with the case from the point of view of the interests of the child instead of the natural claim of the mother. The opinions of Lord Esher and Lord Justice Kay contain a full discussion of the subject. *In re Gyngall, 62 L. J. Q. B.* 559; *2 Q. B.* (1893) 232. If the English Court of Chancery can thus act as *parens patriæ,* surely the State of New Jersey may act in the same capacity through a juvenile court created by the legislature for the purpose.

The provisions of our state constitution as to indictment by a grand jury and trial by a traverse jury apply only to criminal cases and cases in which a trial by jury was had at common law. Trial by jury was not had at common law in the class of cases dealt with by Lord Mansfield and, of course, was not required in cases in the Court of Chancery. The provisions of our constitution as to bail relate only to "offences" and to cases where there is or may be a "conviction" to use the language of the constitution. Proceedings under the Juvenile Court act do not relate to offences, and the act is careful to remove any suggestion that there is an offence or a conviction in the ordinary sense of those words. On general principles, the fact that we make a distinction between minors

and adults, and even a distinction between minors of different ages, is enough to justify the distinction made in the present case between those under and those over the age of sixteen. A notable instance of such a distinction is that referred to in the Pennsylvania case already cited, growing out of our recent statutes, which make the same conduct which on one day amounts to rape amount on the following day only to fornication. No one can properly suggest that the legislature had not the right to make this distinction and to fix the age of consent at sixteen years.

These considerations have influenced many courts. It is enough to refer to a few of the cases which I have examined in addition to the Fisher case. *Hunt* v. *Wayne Circuit Judges,* 142 *Mich.* 93; 7 *Am. & Eng. Ann. Cas.* 821. In this case the general principle was recognized, although the proceedings provided for by the act were unwarranted under the Michigan constitution. *Pugh* v. *Bowden,* 54 *Fla.* 302; 14 *Am. & Eng. Ann. Cas.* 816; *Lindsay* v. *Lindsay,* 257 *Ill.* 328; *Ann. Cas.* (1914) A-1222. I have examined other cases which are cited in these opinions and the trend of authority is quite uniform.

It is suggested, however, that the judge of the juvenile court having power to commit has also the power to discharge and has exercised it in the present case. I think this would be so but for the change introduced in our legislation by *Pamph. L.* 1918, *p.* 343, which was approved later than the legislation of the same year with reference to the juvenile court, and must therefore supersede the earlier legislation. The scheme of this act, as far as now concerns us, was to put the control of the inmates of the State Home for Girls in the hands of the board created by the act. Provisions applicable to the State Home for Boys are made applicable to the State Home for Girls; section 328 (at *p.* 371), enacts that the courts in committing to the home shall not fix or limit the duration of the commitment, but the boy so committed may be detained until he reaches the age of twenty-one years unless such term of detention is terminated *by the board in accordance with its rule and regulations* formally adopted. The

legislature, I think, had the right to give complete control of matters of this kind to the board created by the act and meant to do so.

The result is that the petitioner must be remanded.