STATE OF IOWA ex rel. NEWTON W. ROBERTS, Appellee, v.
CHARLES JOHNSON, Appellant.

**JURY:** Juvenile Act—Failure to Demand Jury. In the absence of a
demand for a jury, the juvenile court has a legal right, under the
Juvenile Act, to proceed to the trial of a juvenile offender charged
with an indictable offense, and to order a commitment to the in-
dustrial school.

*Appeal from Wapello District Court.*—F. M. HUNTER, Judge.

JUNE 22, 1923.

DEFENDANT was tried without demand for a jury before a
district judge sitting as a juvenile court on an information
charging him with delinquency and incorrigibility in conformity
to Chapter 5-B, Title III, of the Supplement to the Code, 1913.
He was found guilty and sentenced to the industrial school for
boys until he reached his majority. Defendant appeals.—
*Affirmed.*

*Heindell & Hunt,* for appellant.

*Newton W. Roberts,* County Attorney, and *Ben J. Gibson,*
Attorney-general, for appellee.

DE GRAFF, J.—On February 11, 1922 the state of Iowa on
the relation of the county attorney of Wapello County filed an
information in the juvenile division of the district court of
Iowa in and for Wapello County accusing one Charles Johnson,
a boy under 16 years of age, to be an incorrigible and delinquent
child. The information also specified the delinquency involved,
to wit: "being armed with a deadly weapon," and "having
made threatening remarks against persons, contrary." etc.

Summons was duly issued and on February 25, 1922 the
defendant entered a plea of not guilty, and on said date, no
demand for jury having been made by him or his parents, trial
was had before District Judge F. M. Hunter sitting as a juvenile

court. Upon the conclusion of the testimony the defendant was found guilty and ordered committed to the State Industrial School for Boys at Eldora "there to remain until he is 21 years of age."

Appellant challenges the jurisdiction of the district judge sitting as a juvenile court to try the defendant on the filed information. It is contended that the defendant is charged with an indictable offense which is not triable without the intervention of a jury. The limitation of our inquiry is only to the form or manner of the trial, but the proposition advanced impeaches the very theory of juvenile legislation in this state. It is not a judicial function to question the wisdom of the legislature in the enactment of a statute. It is our duty to construe and uphold a statute unless it is violative of a constitutional provision.

In the instant case its constitutionality is not involved. The question is one of statutory construction. It is not our thought to express an opinion on the comparative merits of a trial by jury and a trial by the court in cases of this character. Juvenile legislation is a response to the modern spirit of social justice. It is not punitive in character. Probation is the fundamental idea, and it is the intent to remove the juvenile from the environs of the criminal court and save him from the stigma of being charged or treated as a criminal. Under the common law the king was considered *parens patriae,* and under the theory of the modern state we have preserved that idea. The state is the guardian of social interests and is charged with the duty of protecting public and social interests limited by the maxims of the common law and by the law of the land. In solving the problems of social concern in our modern life the legislatures of the different commonwealths have seen fit to prescribe the manner and method of procedure in relation to child welfare, and this includes the various phases of corrective measures written into our juvenile law. With these ends in view and that the purpose of juvenile legislation may be carried out a liberal construction must be given to the statutes in order "that the care, custody and discipline of a child shall approximate as nearly as may be that which should be given by its parents." Section 254-a28 Supplement Code 1913.

The information in this case charges the defendant with being "a delinquent child" and under the provisions of our law it cannot be doubted that the district court sitting as a juvenile court had jurisdiction of the subject-matter and of the defendant. A delinquent child includes "any child under the age of 16 years, who violates any law of this state, or any city or village ordinance; or who is incorrigible." Section 254-a14 *ibid*. The defendant was so charged and in addition thereto the informant particularized as to the manner of delinquency. These added words are *verba descriptionis*.

It is not necessary that an information under the juvenile statute shall conform to the essential requirements of an indictment or criminal information. The summons required by the statute was legally issued. The defendant and his parent duly appeared. Trial proceeded in conformity to law. There was no demand for a jury.

Let it be conceded that the information charged an indictable offense, does this fact make it mandatory on the part of the court to act as a committing magistrate, admit the accused to bail, and refer the cause to a grand jury? Or does the nature of the offense compel the county attorney to file a criminal information charging a public offense? What are the provisions of the statute applicable to the facts of the instant case? It reads: "On the return of the summons or other process, or as soon thereafter as may be, the court shall proceed to hear and dispose of the case in a summary manner."

This necessarily means that procedural methods necessarily incident to the prosecution of crime need not be observed. Clearly this is the legislative intent. The history of this legislation confirms this view. The amendment had its origin in the thirtieth general assembly and is known as Senate File No. 90. It was "a bill for an act to establish a juvenile court, and to regulate the treatment and control of dependent, neglected, and delinquent children."

The committee on judiciary to whom the bill was referred reported it back to the Senate with the recommendation that the bill be amended *inter alia* as follows: "Provided, however, that when the child is brought before the court, charged with the commission of a crime, not punishable with imprisonment for

life, or the penalty of death, the court may, and if the child, its parent or guardian demands, shall place the child on trial for the commission of such offense.'' The offered amendment then distinguished between the method of procedure in indictable and nonindictable offenses. These amendments were adopted and are now a part of Section 254-a16 of the Code. (Supp. 1913.)

The statute first provides for summary trial. It then provides that in the discretion of the court a jury trial is permissible if a nonindictable offense is charged; and upon the demand of either of the parties under summons a jury trial is mandatory. If an indictable offense is charged, and a jury is demanded, the juvenile judge must exercise his power as a committing magistrate. The statute, therefore, empowers the court in the first instance to hear and dispose of the case in a summary manner. This power is consonant with the spirit and intent of juvenile legislation. The court is not dealing with a criminal under the liberal theory and construction of the juvenile law. To hold that the legislature contemplated a jury trial in all cases involving the accusation of crime on the part of a juvenile delinquent would negative the intent of the law and make nugatory its underlying principle. A trial by jury under our criminal practice act cannot be waived by one accused of a crime. *State v. Williams,* 195 Iowa 374.

The instant case is not referable to criminal practice or procedure, except so far as the party under summons elects to come within the proviso of the statute. The intendment of the act contemplates a summary trial. The trial judge acts as a parent should act when corrective measures are necessary to be taken. The proceeding is not formal. The delinquent is not to be subject to unnecessary embarrassment nor surrounded by the morbidly curious that infest the criminal court room. The judge places himself on the same level as the delinquent. The judge ordinarily is not ''on the bench.'' There is more secrecy in the matter and for this reason the boy or girl is encouraged to talk freely. The dominant purpose and aim of the juvenile law is not to punish but to change the line of direction of the conduct of the boy or girl, and to impress upon the plastic mind the necessity of good habits and correct conduct. This is more

nearly accomplished by carrying out the spirit and intent of juvenile legislation as herein expressed.

We deem it unnecessary to detail the evidence or indicate our opinion as to its merits. We feel, however, that under the circumstances and facts disclosed by the record the defendant should now be placed on parole, and we recommend an application to the proper authorities to effectuate this purpose. This statement is not to be construed as an intended criticism on the action of the trial judge as to the sentence pronounced. The judgment and order entered is—*Affirmed.*

PRESTON, C. J., WEAVER and STEVENS, JJ., concur.