## THE STATE OF NEW JERSEY, PROSECUTOR, v. STANLEY GOLDBERG, DEFENDANT.

Argued October 4, 1939—Decided February 13, 1940.

Before Justices Trenchard, Case and Heher.

For the prosecutor, *John J. Breslin, Jr.,* and *Nicholas A. Carella.*

For the defendant, *James A. Major* and *Gaudielle & Shuart (Joseph H. Gaudielle).*

The opinion of the court was delivered by

Case, J.   Defendant, a lad of fifteen years, was indicted by a Bergen county grand jury on two counts charging, respectively, assault with intent to kill and carrying concealed weapons.   The Bergen County Juvenile Court asserted jurisdiction pursuant to *R. S.* 9:18-1.   The Oyer and Terminer, on the contrary, claimed jurisdiction upon the contention that the Juvenile Court act is unconstitutional.   It was deemed wise, on behalf of the state as well as of the defense, that the question should be submitted for decision upon a writ of *certiorari.*   A writ issued, and we now have before us a motion on behalf of the defendant to quash the indictment (1) upon the ground that because of age and the provisions of the statute, *R. S.* 2:103-3.1, the defendant was incapable of committing crime and, *R. S.* 9:18-12, that the only charge to which the defendant may be subjected is that of juvenile delinquency, triable only in the Bergen County Juvenile and Domestic Relations Court, and (2) upon the further ground that the effect of the indictment is to deprive the defendant of due process of law contrary to the Fourteenth Amendment of the Federal Constitution.

The prosecutor states, we think accurately, that "the real point in issue is, does the Juvenile Court act of 1929, as amended, deprive the Oyer of jurisdiction to try the juvenile defendant for assault with intent to kill and carrying concealed weapons?"

*R. S.* 2:103-3.1 (formerly chapter 285, *Pamph. L.* 1935) provides that "a person under the age of sixteen years is deemed incapable of committing a crime under the common law or statute law of this state." *R. S.* 9:18-12 (formerly chapter 284, *Pamph. L.* 1935) provides that "juvenile delin-

quency is hereby defined as the commission by a child under sixteen years of age of any act which when committed by a person of the age of sixteen years or over would constitute: (a) A felony, high misdemeanor, misdemeanor or other offense * * *." In the case of *In re Mei*, 122 *N. J. Eq.* 125, it was held by the Court of Errors and Appeals that the first provision was not to stand by itself as an act of amnesty but was in complement of the second provision and was meant to go as far as, and no further than, the correlative features of the latter act.

The argument of the prosecutor is that *R. S.* 9:18-1 and *R. S.* 2:103-3.1 "seek to deprive a juvenile of his right to indictment, trial by jury, assistance of counsel in his defense, freedom from double jeopardy, protection against self-incrimination, the right of cross-examination, formal trial procedure, confrontation by his traducers, and a public trial, and in their places substitute a star chamber proceeding on complaint which may be made on information and belief and sentence by the Juvenile Court judge to the penalties provided by law for the offense set out therein" and that these statutory enactments have been declared unconstitutional by the decisions of our Court of Errors and Appeals in *Ex parte Daniecki*, 119 *N. J. Eq.* 359; affirming 117 *Id.* 527, and in *In re Mei, supra.*

Both *In re Mei* and *Ex parte Daniecki* were upon issues arising on indictments for murder. The underlying reasoning and the actual holding in the Mei case are to be found, according to our view, in the paragraph of the opinion at page 129 which reads:

"We think that a charge which is in effect that of murder cuts so deeply into human emotions, collides so violently with life's experiences and fair expectations, and is so horrible in fact and in the contemplation of society, that it remains a crime within the purview of the constitution, whatever name and whatever treatment may be appended to it by the legislature," and in the finding at page 130:

"We conclude that the Juvenile Court act has not shorn the Court of Oyer and Terminer of its jurisdiction in murder cases. * * * Murder is indictable and triable as heretofore."

It is true that the line of reasoning pursued by Vice-Chancellor Backes in the Daniecki opinion, given full application, would extend to other indictable offenses; but the indictment there under review, and upon which the holding went, was for murder. It was only by a brief five-word parenthetical insertion that offenses other than murder were brought in; and the purpose of the legislature, doubted by the vice-chancellor, to terminate the system of indictment and common law trial for juvenile offenders was made unmistakable by the subsequently enacted chapters 284 and 285, *Pamph. L.* 1935. We are constrained by the reasoning in the later Mei case to believe that the construction by the Court of Errors and Appeals of the limitations imposed by the constitution upon Juvenile Court jurisdiction to try juvenile offenders does not go beyond such violent and abhorrent crimes as that of murder.

The pertinent constitutional provisions were cited in the Mei decision and need not be repeated. It was determined that the heinous character of the malicious killing of a human being is such that an effective accusation thereof ought not, and may not, be laid without the preliminary sanction of a grand jury. But the fact remains that not all constitutional provisions, and particularly not all of the provisions which concern what may be termed the rights and privileges of individuals, are beyond the power of the benefited individual to waive. For instance, it has long been the statutory law (*Pamph. L.* 1877, *ch.* 138; 2 *Comp. Stat., p.* 1824, § 13; *R. S.* 2:191-1), as well as the frequent practice, that notwithstanding the constitutional provisions that no person shall be held to answer for a criminal offense unless on the presentment or indictment of a grand jury and that the right of a trial by jury shall remain inviolate, a person charged, upon oath, before any magistrate may waive indictment and trial by jury and request to be tried immediately before the Court of Special Sessions without a jury and that the court, unless it shall think the public interest lies otherwise, shall proceed to the trial accordingly. Upon the maxim *quilibet potest renunciare juri pro se introducto* the Supreme Court rendered an opinion by Mr. Justice Depue in *Edwards* v. *State,*

45 *N. J. L.* 419, which sustained that statutory procedure as it was under an earlier enactment ("A supplement to an act entitled 'An act to facilitate judicial proceedings in the County of Essex,'" passed March 27th, 1867) and which has been cited and concurred in by the Court of Errors and Appeals, *State* v. *Knight,* 96 *Id.* 461. See, also, *State* v. *Stevens,* 84 *Id.* 561; *State* v. *Boyd,* 86 *Id.* 75; *affirmed,* 87 *Id.* 328.

Murder, by its very nature, is a crime *sui generis.* The practice with regard to accusation and trial is illustrative. A person cannot plead guilty to murder in the first degree. *State* v. *Genz,* 57 *N. J. L.* 459. If such a plea is tendered, it shall be disregarded and a plea of not guilty entered. *R. S.* 2:138-3. If a guilty plea is tendered, it is not evidential (*State* v. *Smith,* 109 *Id.* 532), and if it be put to the jury that a plea of guilty to the offense has been tendered, a mistrial must be granted. *State* v. *Leaks,* 124 *Id.* 261. The jury must be sequestered, and neither court nor defendant may waive this absolute requisite. *State* v. *O'Leary,* 110 *Id.* 36. The clerk may not be directed to receive the verdict of the jury in the absence of the judge or judges of the court. *R. S.* 2:190-14.

The defendant is here demanding in his own behalf the procedure which the prosecutor of the pleas contends, somewhat anomalously, is a deprivation of the defendant's constitutional safeguards. Whatever may be said about the elimination of indictment and jury trial in crimes of heinous import, we think that such an argument is not pertinent to the offenses with which we are presently concerned. The carrying of concealed weapons is an offense only by statutory enactment. It may, therefore, even as to an adult, be made punishable by a penalty without indictment. *State* v. *Anderson,* 40 *N. J. L.* 224. The offense of assault with intent to kill is a misdemeanor under our statute and was a misdemeanor, not a felony, at common law. Even at common law it was not such an offense as, either in species or in character of the punishment, required the presence of the accused when the verdict was rendered. *Jackson* v. *State,* 49 *Id.* 252.

The legislature of this state, in harmony with a movement that has extended with strong public support throughout many jurisdictions, has long endeavored by statutory enactment to separate, with respect to definition, trial and punishment, the misdeeds of children from public offenses by adults. In the year 1903 (*Pamph. L.* 1903, *ch.* 219) a county court consisting of the judge of the Court of Common Pleas was set up for the trial of juvenile offenders, empowered to try children upon accusation in writing and without a jury for a limited number of offenses, with authority to commit an offending boy or girl to the state home for boys or the state home for girls, as the case might be, or to some other appropriate institution, saving, however, to the boy or girl the right to indictment and trial by jury if he or she should so demand. From that jurisdiction the offenses of murder and manslaughter were omitted. There were subsequent revisions, amendments and supplements, all tending to a more complete severance of the child offender under the age of sixteen years from the older miscreant or criminal. The final revision was passed by the legislature as chapter 157 of the Pamphlet Laws of 1929 entitled "An act to establish Juvenile and Domestic Relations Courts, defining their jurisdiction, powers and duties, and regulating procedure therein. (Revision of 1929.)" The legislation which results in the present issue consists of an amendatory act (chapter 284, *Pamph. L.* 1935) whereby section 2 of the 1929 Revision was amended as in manner first above stated and an accompanying statute (chapter 285, *Pamph. L.* 1935) separately entitled, but nevertheless, as determined in the Mei case, *supra,* complementary thereto. The 1929 statute with its changes as legislatively accomplished up to 1937 is found in the Revised Statutes under the numerals 9 :18-1, *et seq.*

The goal of this movement, namely, the saving of erring children to their own better selves and to orderly, law-abiding society, is beyond criticism. With the sufficiency of specific legislation to reach that objection we are not concerned. It is for us to determine whether, on the case before us, the enabling statutory provisions are or are not constitutional. After all, there is a boundary, usually regarded as extending

from birth to the age of seven years, within which by common sense and by common assent it is considered that a human being is incapable of committing a crime. It is not reasonable to suppose that a child passes over night from incapacity to capacity; indeed, we know that that is not so. For practical purposes, however, an arbitrary age, or arbitrary ages, must, it seems, be fixed to measure the advancement of mental and moral perception and the assumption of culpability. It is apparent that there is, and of necessity must be, in the growing mentality of the normal youth, a period of dawn, incapable of precise fixation, wherein there forms an idea of the nature and extent of the duties of the individual to society and a development of that idea from indistinctness to a well defined concept. The legislature, so long as it does not infringe upon constitutional inhibitions, has power to fix, within reasonable human experience, the times of demarcation. Except where, as is the case with murder, the very laying of the accusation is an affront which should not be permitted without the finding of a charge by a grand jury, we consider that the general scheme of this separate system, for youth of early adolescence, is for and not against the rights of the child and increases rather than violates the constitutional protection of the individual against governmental abuses. The proceedings authorized by the statute are not proceedings by way of punishment but by way of reformation, education and parental care, intended to save children from the consequences of wrongful conduct which in an older person would merit indictment, conviction and punishment, and are in the nature of ascertaining what the conduct of a child under sixteen years has been and whether restraint and care from the public authorities should in larger degree be substituted for that which the child would ordinarily receive from its parents. *Ex parte Newkosky,* 94 *N. J. L.* 314.

We do not undertake to decide whether all of the details of procedure outlined by the prosecutor as incident to a proceeding before the Juvenile and Domestic Relations Court will, in each instance, prove to be sound; but we answer affirmatively the question put at the beginning of this opinion. Our holding is that the Juvenile Court act does, constitutionally,

deprive the Bergen Oyer and Terminer of jurisdiction to try this defendant on the pending indictment.

The defendant asks that the indictment should be quashed or, in the alternative, be remitted to the clerk of the Bergen Oyer and Terminer with instruction to transmit it to the Juvenile and Domestic Relations Court for trial in accordance with the law and the practice of that court. We think that when, subsequent to the grand jury action, it was found that the defendant was under the age of sixteen years at the time of the committing the alleged offenses, the Court of Oyer and Terminer should have transferred the case, with all of the papers, documents and testimony connected therewith, to the Juvenile and Domestic Relations Court to the end that that court should proceed to hear and dispose of the case in the same manner as if it had been instituted in that court in the first instance. It will be ordered accordingly. No costs.

Heher, J. (Dissenting.) I dissent upon the ground that it is beyond the power of the legislature to term either murder or an assault with intent to kill "juvenile delinquency," and then proceed to an adjudication of guilt without regarding the constitutional safeguards applicable to criminal prosecutions, and impose, upon that adjudication, the penalty prescribed for the specific criminal offense thus branded juvenile delinquency. I so interpret the statute.

R. S. 1937, 9:18-30 authorizes, upon such adjudication, the imposition of "the penalty provided by law"—one that was established as in consonance with the criminal concept of the particular transgression against society. The difference in nomenclature does not alter the essential character of the act thus given judicial cognizance. For a specific offense, termed a crime when committed by a person of the age of sixteen years or more, the court may impose the same penalty prescribed by the law in the case of an adult, although, "on proper cause shown," it "may" direct that the child be committed "to a public institution established for the care, custody, instruction and reform of juvenile offenders," or "to any other like institution commitment to which may be au-

thorized by law." However praiseworthy the purpose, it seems to me that only by amendment of the organic law can such a radical departure be had.