[Crim. Nos. 4169-4172. Second Dist., Div. One. Jan. 23, 1948.]

In re PATSY JANE O'DAY et al., Minors.

Eugene V. McPherson for Appellants.

Fred N. Howser, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

DORAN, Acting P. J.—The present appeal is denominated one "from the findings of the Court that each of these juveniles were delinquents and from the orders of the Court finding them to be wards of the Juvenile Court." It is to be noted, however, that although appellants were determined to be wards of the court, there was no finding that any of the minors were juvenile delinquents.

On December 17, 1946, petitions signed by a police officer were filed, alleging that the appellants were under 21 years of age, and were persons having "no parent or guardian or guardian actually exercising such proper parental control," in the language of subdivision (b) of section 700 of the Welfare and Institutions Code, governing juvenile court procedure. These petitions alleged, among other things, that the four girls "have been living in the home of the parents and at the present time the father is under arrest on a charge of violation of 288 P. C. having been accused by Patsy Jane, age 14, Marion, age 12, and Thelma Jean, age 11 of committing lewd and lascivious acts upon their persons. Carol Francis has not been molested sexually but her life has been threatened upon several occasions by her father and all four of these little girls have been threatened with great bodily harm by the father if they reported any of his activities to the authorities."

The petitions were heard before a referee on December 26, 1946, January 9, 16, 30, 1947, and February 6, 1947; the referee's findings and recommendations were approved and on February 6, 1947, the judge declared appellants to be wards of the juvenile court, and committed each child to a probation officer to remain in juvenile hall until no longer needed as a witness against the father. Thereafter, further hearings were held; on April 17, 1947, it was ordered that the minors remain in custody of the probation officer in the home of the mother. On June 16, 1947, after the father had been convicted, however, the judge found that the welfare of each minor required that custody be taken from the mother, that Patsy be placed in

the Convent of the Good Shepherd, and that the other minors should remain in juvenile hall pending suitable placement. The same legal points are involved in all four cases; evidence was taken together, and appellants' brief treats the four cases as one.

▆▆▆ According to the appellants' brief, the main contention on this appeal is that appellants were denied ''the right to have counsel.'' In this connection reference is made to the stenographic transcript of a hearing before the juvenile court held on June 2, 1947, which discloses the following:

''COURT: Now, let me ask you something, Mr. McPherson, do you represent these four children?

''ATTY. McPHERSON: Yes, I do.

''Q. And you are associated with Mrs. Gladys Root? A. Yes, I am, sure.

''Q. And Mrs. Gladys Root represents the father of these four children? A. That's right.

''Q. And also, Mrs. Gladys Root represents the father in a motion which is set for hearing tomorrow before Judge Gates in Department 46 of the Superior Court, a motion whereby she is applying for a modification of the sentence hereinbefore pronounced? A. A motion to rehear probation.

''Q. Now on what possible theory, Mr. McPherson, do you claim the legal right to represent these four girls? A. I claim I have the legal right to represent because there isn't any conflict of legal interest between these girls and their father.

. . . . . . . .

''Q. There very definitely is a conflict now, and you know it. A. I don't know it.

''Q. Well, for your information, so as to get the record entirely straight, these four girls . . . appeared in this Court on December 17, at which time there were petitions filed alleging, among other things, that their father had committed lewd and lascivious acts on their persons. . . . Subsequently, . . . December 30, I believe, Mrs. O'Day brought the four children back to Juvenile Court and made the statement . . . that some of the relatives of her husband had attempted to contact these . girls. She did not feel she could safely keep them at home and asked the Juvenile Court to keep them here at Juvenile Hall. Subsequently . . . (they) were made wards of the Juvenile Court.

. . . . . . . .

''Q. And that evidence (the girls' testimony at preliminary

examination) was submitted to Judge Gates and based on that evidence Judge Gates found the defendant guilty. What took place after that when you and Mrs. Root stepped in the case is a matter of record. You now appear for their father. A. I appear for the girls.

''Q. Well, Mrs. Root appears for the father and you're the same as Mrs. Root. A. Well, probably so.

''Q. Well, now on what possible theory can you represent these four girls. A. At the present time, at this present stage, there is no conflict of interest between what Mr. O'Day says happened and what these children say happened.

''Q. As far as the Juvenile Court is concerned there is. A. You're the one that has to decide it. We should decide it for the best interests of the children.''

The attorney's contention that there was no present conflict of interest between the father and the girls is predicated upon the fact that subsequent to the father's conviction and sentence to San Quentin, according to testimony of Mrs. O'Day, ''the children saw how serious they made it, and they came to me and said it was not all true, and said at that time they wanted to change their story, but said they were afraid to do so.'' Thereafter, the mother testified that ''I took it upon myself to see an attorney,'' and thereafter the motion for re· hearing of the father's application for probation was made. According to findings made by Referee Margaret P. Pratt following a hearing held on April 24, 1947, at which the children were present, ''each one denies under oath that the father had ever molested them. They now state that they had talked about such things with a 'Mexican girl' (who) . . . told them she was angry with her father because he had punished her, and that she was going to accuse him of misconduct.''

In reference to the alleged denial of the right to counsel, appellants cite *In re Rider,* 50 Cal.App. 797 [195 P. 965], and *In re Tahbel,* 46 Cal.App. 755 [189 P. 804]. As pointed out in respondent's brief, however, neither case is comparable to the present situation. In the Rider case the minor was confined in juvenile hall awaiting trial on a felony charge, and the court held that the child was entitled to consult privately with counsel ''to the end that thereby she may prepare for her defense.'' In the Tahbel case the minor was held in juvenile hall for refusal to answer alleged incriminating questions, and it was held that the constitutional privilege against self-incrimination was applicable and hence that the confinement

was not justified. In the instant case there was no criminal charge against the four girls, nor was the confinement because of any refusal to testify. There was not even an adjudication of delinquency, and the minors were simply adjudged wards of the juvenile court for their own protection.

The entire juvenile court procedure is, indeed, designed to protect children who are the innocent victims of improper home influences. The proceedings are not punitive in nature, nor are the minors to be deemed adverse parties. Section 736 of the Welfare and Institutions Code provides that ''An order adjudging a person to be a ward of the juvenile court shall not be deemed a conviction of crime.'' It may also be noted that this code contains no provision for the representation of minors by attorneys at law.

Manifestly the question of custody is addressed to the discretion of the court. Section 729 of the code, provides that ''Until the final disposition of the case, the minor may be retained by the person having charge of him, *or may be kept, upon the order of the court, in some suitable place, provided by the county, or may be held otherwise, as the court may direct.*''

In the case of *In re McDermott*, 77 Cal.App. 109, 112 [246 P. 89], a minor had been adjudged a ward of the court but allowed to remain with the parents; four years later, while the minor was still a ward, an order was made for the child's removal and placement in a juvenile home. The father then retained an attorney who sought to consult with the minor in reference to the change in custody. On refusal of this permission a writ of habeas corpus was sought to compel the authorities to permit the conference between attorney and client. In the appellate court it was held that where the ward had not been accused of crime and the change in custody involved ''purely a matter of judgment or discretion'' on the part of the juvenile court, ''neither necessity nor occasion exists for the advice of an attorney in relation thereof,'' and therefore no rights of the ward in this connection had been violated.

Based on the foregoing, the same may be said in the instant case. As already noted, several hearings in juvenile court had been held, at some of which the minors' attorney had been present, and under oath the girls had made conflicting statements as to the father's conduct. The mother was apparently aiding the father in seeking probation after the latter's conviction for molesting the children. As suggested in

respondent's brief, "If the father had molested them, then the Court was entirely justified in keeping the children free from any possible contact with the father." In any event there is evidence that the home atmosphere surrounding these wards was not conducive to their best interests, and there is no showing of any abuse of discretion in reference to the matter of custody.

The record nowhere indicates that the attorney sought to present or was prevented from offering any evidence on behalf of the minors. Nor does it appear that the best interests of these children was not adequately protected at all points in the proceeding. Likewise, there is nothing to show that consultation between the minors and the attorney was denied after the referee's attention had been called to the complaint that such a conference at juvenile hall had previously been denied. The appellants' other contentions are untenable.

The orders appealed from are therefore affirmed.

White, J., concurred. York, P. J., did not participate.