STATE OF DELAWARE v. CHARLES D. NAYLOR, ALFRED L. RICHARDSON, MICHAEL YOUNG.

APPLICATION of CHARLES D. NAYLOR, Petitioner, for Writ of Habeas Corpus.

(*February* 5, 1965)

Lynch J., sitting.

*Ruth M. Ferrell,* Deputy Attorney-General, for the State of Delaware.

*Bruce M. Stargatt,* of Morford, Young & Conway, for Charles D. Naylor as defendant in criminal actions and as petitioner in habeas corpus proceedings.

*Clyde M. England, Jr.,* of Killoran & Van Brunt, for defendant Alfred Lee Richardson.

*Sidney Balick,* for defendant Michael Young.

Superior Court of Delaware, for New Castle County.

No. 922 Criminal Action 1964.

LYNCH, Judge.

█ At the time the defendants[1] in the above styled and

---

[1] Naylor's date of birth was December 13, 1946; he was about 5 months less than 18 years old when arrested. He became 18 on December 13, 1964, and so is now amenable to the criminal processes of this court, *State v. Fowler,* 194 A.2d 558 (Super. Ct.1963). Richardson's date of birth was January 16, 1948; he had passed his 16th birthday when he allegedly committed the offenses giving rise to his arrest. He has now passed his 17th birthday. Young's date of birth was August 14, 1947; he was not quite 17 when he allegedly committed the offenses giving rise to his arrest. He has become 17 years old but he is not yet 18 years old.

numbered criminal actions and the Petitioner in the Habeas Corpus proceeding were arrested on June 29 and 30, 1964, by the Wilmington City Police, they were minors, i.e. over the age of 16 and under the age of 18 years.

They were charged with the commission of a number of alleged crimes, including several robberies (felonies), and in accordance with the provisions of Title II, *Delaware Code,* they were taken before the Family Court of New Castle County, where they were charged as delinquents.

On July 2, 1964, one of the Judges of that court represented to this court that each of said persons had attained his sixteenth birthday, but not his eighteenth birthday; that in spite of intensive efforts of the Family Court, with reference to previous delinquencies, none had responded to available rehabilitative services of the Family Court; that each of said persons is now charged with other offenses, all of which were committed following his sixteenth birthday, and in the judgment of the Family Court, none of said persons "is amendable to and will not profit by any further processes or services available to and in the Family Court."

On such representations and pursuant to statute, 11 *Del.C.* Secs. 2711 amd 2712. the Family Court requested this court to take sole and exclusive jurisdiction of the persons and offenses so that the Attorney General could proceed by information or indictment. Attached to each of the petitions were copies of orders entered by the Family Court, certified to by the Clerk of the Family Court, reciting:

"* * * the above child being present, the Court, after hearing the evidence presented, being satisfied that the said child did commit the offense of which he is accused, THE HONORABLE * * * JUDGE OF THE FAMILY COURT, ORDERED * * *

"That with respect to * * *.

"THAT his case was brought before the Court on a charge of robbery * * *.

"THAT this charge also involved several other adults.

"THAT this Defendant has been before this Court periodically since 1959. He has refused to accept the help, guidance and counseling offered and extended to him by this Court.

"THAT in view of his repetitive offenses and the seriousness of the present charges this Court feels that he is not longer amenable to its services or processes.

"THAT I am, therefore, referring him to the jurisdiction of the Superior Court where he will answer these charges as an adult.

"THAT let the record show that Defendant, * * * was advised of his Constitutional Rights to obtain an attorney and he indicated that he wishes to obtain an attorney.

"THAT on the charge of Robbery and possible Homicide bail is set at $8,000.00

"* * *.

"THAT pending posting of the bail he will be detained at the First Offenders Building because of his extensive Juvenile record and the seriousness of the charges."

After the Family Court had so acted and this court took jurisdiction, the defendants were indicted by the Grand Jury, charged with several offenses, including commission of a number of felonies. After this court took jurisdiction of the defendants, it appointed counsel to represent them.

Defendants Richardson and Young were released on bail,

pursuant to Orders of the Family Court; the defendant Naylor was, however, detained in the First Offenders Building of the New Castle County Correctional Institution because he was unable to make his bail.

Following the return of the indictments, counsel for each of the defendants served on the Attorney General and thereafter filed a motion to dismiss the indictments, contending thereby:

"1.   Defendant was not accorded a preliminary hearing of any kind; and

"2.   Defendant was not afforded counsel at the hearing which was held * * * in the Family Court for New Castle County which hearing was supposedly conducted pursuant to Title II, Section 2711, et seq.

"3.   Although defendant is under the age of 18 years (a fact known to the State), the State did not follow the mandatory procedure at 11 *Del. C.* Sec. 2711 et seq., with the result that this Court is without jurisdiction.

"4.   The indictments must be dismissed because pursuant to Section 2713[2] of Title 11 the Family Court for New Castle County must continue to exercise its jurisdiction in this matter."

An affidavit of each defendant was filed in support of the factual allegations as are set forth in the several motions to dismiss the indictment. These motions ostensibly were filed in accordance with the provisions of Rule 12 and Rule 47(a), Superior Court Rules of Criminal Procedure, *Del. C.* Ann. Memoranda was filed by counsel for the defendants and by the Attorney General and the motions were set down for oral argument.

----

[2]Title 11 *Del. Code,* Sec. 2713 was repealed June 25, 1959, 52 Del. Laws, Ch. 102, so this ground has no substance and will be disregarded.

Some preliminary discussion of applicable statutes seems desirable in order that the contentions raised by defendants can be understood.

By statute, 10 *Del. C.* Sec. 951(2), as amended, the Family Court of New Castle County has been vested with exclusive original jurisdiction in all proceedings in New Castle County, "concerning any child residing or found in New Castle County charged with having violated any law of this State * * *."

Title 11 *Del. C.* Secs. 2711 and 2712 provide:

"Sec. 2711. Grounds for jurisdictional change

"Any child, who has attained his or her sixteenth birthday and who is alleged to have thereafter committed an offense, which, but for this subchapter would have been a delinquent act only, and who, in the judgment of the court which conducts on behalf of this State, a hearing in his or her interest, is not amenable to and will not profit by the processes of the court, may be proceeded against by information or indictment and be prosecuted in the same manner and in the same court, and upon conviction shall suffer the same penalties for the commission of the offense as if the child were an adult at the time of the commission of the offense. As amended 52 Del. Laws, Ch. 102, eff. June 25, 1959."[3]

"Sec. 2712. Vesting of exclusive jurisdiction in Superior Court.

"When there shall have been filed in the office of the

---

[3]The Code Commission's revision notes recite: "1959 Amendment. 52 Del. Laws, Ch. 102, omitted 'in the discretion of the Attorney General, and with the consent of a Judge of the Superior Court of the county in which the offense is committed' preceding 'be proceeded against' and omitted 'beyond the age of 21 years' following 'were an adult.'

In short, jurisdiction of the Superior Court attaches immediately when the Family Court's statement is filed in the Office of the Prothonotary. In substance, the Family Court's action is a waiver of its theretofore "exclusive jurisdiction" over the juveniles.

Prothonotary of the county in which the offense was committed, as a part of the permanent records in the case, a statement in writing, signed by the judge of the inferior court having jurisdiction of the child and of the offense, setting forth that in the judgment of the court the child is not amenable to and will not profit by the processes of the court, the same shall constitute a deprivation of jurisdiction over the person and the offense of the child of all inferior courts of this State, and the sole and exclusive jurisdiction of the person and of the offense of the child shall vest in the Superior Court and the Attorney General may thereafter proceed by information or indictment, as the case may be. As amended 52 Del. Laws, Ch. 102, eff. June 25, 1959."[4]

The Supreme Court of Delaware, pursuant to its Rule Making Powers (1897 Const., Art. 4, Sec. 13 (1), *Del. C.* Ann.), on November 6, 1952 adopted, and made effective February 12, 1953, Rules of Criminal Procedure for the Superior Court of the State of Delaware.

Rule 1 of said Rules prescribes that:

"RULE 1. SCOPE

"These rules govern the procedure in the Superior Court of the State of Delaware in all criminal proceedings and the procedure before Justices of the Peace, Courts of Common Pleas in each of the counties, the Municipal Court for the City of Wilmington, The Family Court for New Castle County and the Juvenile Courts for each of the counties, in proceedings preliminary to indictment by grand jury or the filing of an information in the Superior Court."

Rule 2, in part, prescribes:

----

[4]The Code Commission's revision notes recite: "In 1959 Amendment. 52 Del. Laws, Ch. 102, omitted reference to exercise by Attorney General of his discretion to proceed by information or indictment against a child under section 2711 of this title, and deleted requirement that order [as previously required by 11 *Del. C.* Sec. 2713] assuming jurisdiction shall have been filed by judge of Superior Court before jurisdiction vests in such court."

## "RULE 2. PURPOSE AND CONSTRUCTION

"These rules are intended to provide for the just determination of every criminal proceeding. * * *."

Rule 5 of said Rules prescribes:

## "RULE 5. PROCEEDINGS BEFORE THE COMMITTING MAGISTRATE

"(a) Appearance. An officer making an arrest with or without a warrant or any other authorized peace officer shall take the arrested person without unreasonable delay before either the nearest available Justice of the Peace of the county in which the offense is alleged to have been committed or before the court out of which the warrant issued, in accordance with the command of the warrant. When an arrest is made without a warrant, a complaint shall be made as soon as the accused is brought before a committing magistrate.

"(b) Statement by the Committing Magistrate. The committing magistrate shall inform the defendant of the complaint against him, of his right to retain counsel and of his right to have a preliminary hearing. He shall also inform the defendant that he is not required to make a statement and that any statement made by him may be used against him. The committing magistrate shall allow the defendant reasonable time and opportunity to consult counsel and shall admit the defendant to bail as provided in these rules.

"(c) Preliminary Hearing. The defendant shall not be called upon to plead. If the defendant waives preliminary hearing, the committing magistrate shall forthwith hold him to answer in the Superior Court. If the defendant does not waive hearing, the committing magistrate shall hear the evidence within a reasonable time. The defendant may cross-examine witnesses against him and may introduce evidence in his own behalf. If from the evidence it appears to the committing magistrate that there is probable cause to believe that an offense has been committed and that the defendant has committed it, the

committing magistrate shall forthwith hold him to answer in the Superior Court; otherwise the committing magistrate shall [discharge him]. [The committing magistrate shall] admit the defendant to bail as provided in these rules. After concluding the proceedings the committing magistrate shall transmit forthwith to the prothonotary for the proper county all papers in the proceeding and any bail taken by him."

Rule 12 of said Rules prescribes:

## "RULE 12. PLEADING AND MOTIONS BEFORE TRIAL: DEFENSE AND OBJECTIONS

"(a) Pleadings and Motions. Pleadings in criminal proceedings shall be the indictment or the information, and the pleas of not guilty, guilty and nolo contendere. All other pleas, and demurrers and motions to quash are abolished, and defenses and objections raised before trial which heretofore could have been raised by one or more of them shall be raised only by motion to dismiss or to grant appropriate relief, as provided in these rules.

"(b) The Motion Raising Defenses and Objections.

"(1) Defenses and Objections Which May Be Raised. Any defense or objection which is capable of determination without the trial of the general issue may be raised before trial by motion.

"(2) Defenses and Objections Which Must Be Raised. Defenses and objections based on defects in the institution of the prosecution or in the indictment or information other than that it fails to show jurisdiction in the court or to charge an offense may be raised only by motion before trial. The motion shall include all such defenses and objections then available to the defendant. Failure to present any such defense or objection as herein provided constitutes a waiver thereof, but the court for cause shown may grant relief from the waiver. Lack of jurisdiction or the failure of the indictment or information to charge an offense shall be noticed by the court at any time during the pendency

of the proceeding.

"* * *.

"(4) Hearing on Motion. A motion before trial raising defenses or objections shall be determined before trial unless the court orders that it be deferred for determination at the trial of the general issue. An issue of fact shall be tried by a jury if a jury trial is required under a constitutional or statutory provisions. All other issues of fact shall be determined by the court with or without a jury or on affidavits or in such other manner as the court may direct.

"* * *."

At oral argument on the motions to dismiss, the court was of opinion that in light of the certified copies of the Orders of the Family Court, reciting the several factual findings, and the fact they had been filed, as called for by the statute, jurisdiction had attached in this court, and some question might arise if the court proceeded to determine the challenge of its jurisdiction as raised by the motions to dismiss, based solely on the affidavits of the defendants, and consequently directed a hearing be held on such motions, at which testimony in support of and in opposition to the motions would be received, and the defendants would be subject to cross-examination, to determine the relevant facts. This was in accordance with Rule 12(b) (4), Rules of Criminal Procedure, authorizing the court to direct the manner of determining issues of fact. Such hearing was held thereafter, prior to which time the defendant Naylor, who was still in custody, filed an application for a Writ of Habeas Corpus, in which the same challenges to jurisdiction were raised as were presented by the motions to dismiss the indictments.

The defendants all testified under oath, and in support of their motions and the petition for a Writ of Habeas Corpus and their testimony tended to prove that no hearings had been held of their cases in the Family Court.[5] Opportunity was given to the Judge of the Family Court—who had considered the offenses filed against defendants

in that court and who signed the orders of transfer to this court—to give testimony in refutation of the defendant's evidence. Such Judge did not, however, choose to testify, but advised this court, in writing, that the testimony as given by the defendants was, in substance, correct. Hence this court finds for defendants, the several facts as are asserted by the defendants in their respective motions to dismiss. An order has heretofore been entered, granting the Writ of Habeas Corpus and ordering the discharge of defendant Naylor from custody. There is left for consideration a determination of the motions to dismiss.

Usually a motion to dismiss an indictment is limited to a consideration by the court of the facts thereof to determine if a crime is properly charged, *United States v. Chin Doong Art,* 180 F. Supp. 446 (E.D. N.Y., 1960). But if a question of jurisdiction of this court of the person or offense is raised by the motion to dismiss, a defendant is permitted by Rule 12 (b) (2)[6] to file such a motion. If an indictment or a count therein does not charge the commission of a crime or there is a defect of jurisdiction, a court can notice such defect at any time, even on appeal for the first time, *United States v. Manuszak,* 234 F.2d 421 (CCA3, 1956) and *Gendron v. United States,* 295 F. 2d 897 (CCA8, 1961).

Since a court can and may take judicial notice of its own records and those of inferior courts, see Vol. 2B, Barron & Holtzoff, Federal Practice and Procedure (Wright Ed.) Sec. 963, pages 227 and 228 and pages 49-50, 1964 Pocket Part Supp; see also McCormick on Evidence, Sec. 327, it seems clear, on principle, that a court can, in a hearing provided under Rule 12 (b) (4), take evidence to contradict a

---

[5]Title 11 *Del. Code* Sec. 2711 provides for "a hearing in his or her [the alleged delinquent] interest" and apparently a finding the delinquent "is not amenable to and will not profit by the processes of the [Family] court." Title 11 *Del. Code.* Sec. 2712 refers to the statement of the Judge of the Family Court, filed with the Prothonotary, as a "judgment of the Court [that] the child is not amenable to and will not profit by the processes of the [Family] Court. These two elements or factors' presuppose the holding of the statutorily provided hearing and the showing of evidence leading to the "judgment" and the finding.

[6]See page 6, supra.

record of an inferior court. In this case, the evidence has clearly shown that the Judge of the Family Court did not conduct the hearing he was, by statute, required to conduct, and so as to reach the judgment that these juveniles could no longer be treated in the Family Court, see supra, p. 7, as the statute requires.

Proceeding then to consider the applicability of the Rules of Criminal Procedure, supra, p. 5, to the proceedings before the Family Court of New Castle County, the court notes that the United States Court of Appeals, District of Columbia, has ruled[7] in *Pee v. United States,* 107 U.S. App. D.C. 47, 274 F.2d 556, 558-559 (1959) and in *Harling v. United States,* 111 U.S. App. D.C. 174, 295 F.2d 161, 163 (1961)—cases involving the application of the District of Columbia Juvenile Court Code—that:

"from the moment a child commits an offense, 'in effect he is exempt from the criminal law' unless and until the Juvenile Court waives its jurisdiction. During that period the juvenile rules govern; * * *. It is Rule 5 of the Federal Rules of Criminal Procedure which requires a preliminary hearing 'without unnecessary delay,' but those rules do not apply in juvenile proceedings. In these circumstances the question whether Rule 5, if it had been applicable, would have been violated, is an irrelevant question.

"It is, of course, because children are, generally speaking, exempt from criminal penalties that safeguards of the criminal law, such as Rule 5 * * * have no general application in juvenile proceedings. * * *."

It seems quite clear from reading 10 *Del. C.* Secs. 902, 951 and 1102, that the Family Courts of this state have "exclusive jurisdiction" of "delinquent children" who are "charged with having violated any law of this State," and in such cases our Family Courts, 10

---

[7]The provisions of the District of Columbia Juvenile Court Code, 11 *D.C.Code,* Sec. 901, enacted pursuant to 34 Statutes at Large 73, have the same or similar language as is found in our Family Court Statutes relating to delinquent children.

*Del. Code,* Sec. 902, are obligated:

"(a) * * * to secure for each child covered by its provisions, such care, guidance and control, preferably in his own home, as will serve the child's welfare and the best interests of the State: and when such child is removed from his ·own family to secure for him custody, care and discipline as nearly as possible equivalent to that which should have been given by his own parents, ·and to give original and exclusive jurisdiction to one Court in which matters pertaining to a family may be adjudicated.

"(b) The Court shall have jurisdiction over both civil and criminal matters, as set forth in this chapter; and shall provide for investigation of circumstances, and such probation work as may remove the necessity for committing persons to the corrective institutions of the State, to the end that the home shall, if possible, remain unbroken and the legal duty and responsibility existing between man and wife, and parent and child, shall be recognized."

Hence, the above cited holdings of the Court of Appeals, District of Columbia are most persuasive and consequently, I hold that Rule 5 of the Rules of Criminal Procedure was not applicable in these cases and the Judges of the Family Court were not required to abide by the terms of Rule 5, since the Family Court was not exercising its jurisdiction over criminal matters; the defendants were before the Family Court as delinquents, and were to be treated as such until the Family Court "waived" its "exclusive jurisdiction" in accordance with the statute.

The objective of courts like our Family Courts or Juvenile Courts, as they are known in some states, is remedial. Legislatures have recognized a need to distinguish between children and adults as offenders. The express intent of the statutes has been to treat offenses committed by persons legally in the status of infants just as a parent would. This is so because of the need to channel conduct away from tendencies vile toward that which is socially acceptable, *Bryant v. Brown,* 151 Miss. 398, 118 So. 184, 188, 60 A.L.R. 1325 and In re

Santillanes, 47 N.M. 140, 138 P.2d 503, 508. A comparison of selected statutes, such as the New York Children's Court Act, Secs. 13-15; Illinois Rev. Stat. Ch. 23, Secs. 2006, 2007; Ohio Rev. Code, Secs. 2151.27–2151.30; and California Welfare & Inst. Code, Secs. 511, 650, 656, 657, 678, with our Family Court Statutes, 10 *Del. C.* Ch. 9–11, will reveal this uniform intent; see In re Hagadorn, 11 Misc. 2d 51, 171 N.Y. S.2d 433, 436 (1958).

The courts created by this kind of legislation have developed informal and non-technical procedures in the effort to reach what is considered the best welfare of those with whom it deals.

Defendants next have urged that the indictments should be dismissed because no counsel were appointed for defendants by the Family Court in such proceedings as were conducted in the Family Court, pursuant to 11 *Del. C.* Secs. 2711 and 2712.

Substantially that presents the issue of what constitutional guarantees are applicable to delinquency proceedings brought against juveniles in courts like our Family Courts. An examination of the Digests show by and large that the courts have held, in general, that the constitutional guarantees are not applicable to delinquency proceedings in a court which deals with juveniles; *White v. Reid,* 125 F.Supp. 647, 649 (Dist. Ct. Dist. Col. 1954); *United States v. Borders,* 154 F.Supp. 214, 216 (Dist. Ct. N.D.Ala. 1951); Ex parte Sharp, 15 Idaho 120, 96 P. 563, 18 L.R.A.,N.S., 886 (1908);*State v. Goldberg,* 124 N.J.L. 272, 11 A.2d 299, 301–303 (1940), affirmed 125 N.J.L. 501, 17 A.2d 173 (Ct. of E. & A. 1940);*Akers v. State,* 114 Ind. App. 195, 51 N.E.2d 91, 94 (1943); Ex parte Naccarat, 328 Mo. 722, 41 S.W.2d 176, 178 (1931), 76 A.L.R. 654; Flexner & Oppenheimer, The Legal Aspect of the Juvenile Court, 57 Am.L.Rev. 65, 68; Juvenile Justice: Treatment or Travesty, 11 U.Pitt. L. Rev. 277, 280.

The reason most commonly assigned for this conclusion is that delinquency proceedings in such courts are not criminal in nature and that the purpose of the proceedings is the reform of the child rather than his punishment.

For instance, it was held in the following cases that a child brought before a Juvenile Court on a charge of delinquency is not entitled, by constitutional right, to a jury trial in the determination of his delinquency status. *Dendy v. Wilson,* 142 Tex. 460, 179 S.W.2d 269, 277, 151 A.L.R. 1217 (1944); *Wissenberg v. Bradley,* 209 Iowa 813, 229 N.W. 205, 209 (1930), 67 A.L.R. 1075 (Annotation); *Commonwealth v. Carnes,* 82 Pa. Super. 335, 338 (1923); In re Gomez, 113 Vt. 224, 32 A.2d 138, 140 (1943); *Lindsay v. Lindsay,* 257 Ill. 328, 100 N.E. 892 (1913), 45 L.R.A., N.S., 908 (Annotation); Ex parte Daedler, 194 Cal. 320, 228 P. 467, 468–471 (1924); *People ex rel Weber v. Fifield, 136 Cal.App.2d 741, 289 P.2d 303 (1955); Commonwealth v. Fisher,* 213 Pa. 48, 62 A. 198, 200 (1905); *Laurie v. State,* 108 Neb. 239, 188 N.W. 110, 111 (1922); State ex rel. *Olson v. Brown* 50 Minn. 353, 52 N.W. 935, 16 L.R.A. 691 (1892); Ex parte Peterson, 151 Minn. 467, 187 N.W. 226 (1922); *Wisconsin Industrial School for Girls v. Clark County,* 103 Wis. 651, 79 N.W. 422, 426 (1899); *Dinson v. Drosta,* 39 Ind.App. 432, 80 N.E. 32 (1907); *State v. Heath,* 352 Mo. 1147, 181 S.W.2d 517 (1944); State ex rel. *Matacia v. Buckner,* 300 Mo. 359, 254 S.W. 179, 181 (1923); In re Turner, 94 Kan. 115, 145 P. 871, 873 (1915); Ex parte King, 141 Ark. 213, 217 S.W. 465, 467 (1919); *Marlow v. Commonwealth,* 142 Ky. 106, 133 S.W. 1137 (1911); Ex parte Newkosky, 94 N.J.L. 314, 116 A. 716 (1920); Ex parte Watson, 157 N.C. 340, 72 S.E. 1049, 1053 (1911), Annotation 67 A.L.R. 1082.

State ex rel. *Shaw v. Breon,* 244 Iowa 49, 55 N.W.2d 565, 568 (1952), however, holds that in certain circumstances a juvenile has a constitutional right to trial by jury in a delinquency proceeding.

The above stated rule has been applied also to proceedings involving the revocation of a minor's parole, change of custody and removal from one institution to another, such as from reform school to a penitentiary. *Erwin v. Williams,* Tex. Civ. App., 253 S.W.2d 303, 305 (1952); In re O'Day, 83 Cal.App.2d 339, 189 P.2d 525 (1948); In re Hoskins, Tex. Civ. App., 198 S.W.2d 460 (1946); *Harwood v. State* ex rel. Pillars, 184 Tenn. 515, 201 S.W.2d 672, 674 (1947).

It likewise has been held that the constitutional guarantee of indictment by a Grand Jury does not apply to delinquency proceedings in a court which deals with the juvenile as a delinquent. Ex parte Januszewski, 6 Cir., 196 F. 123 (1911); *State v. Goldberg,* 124 N.J.L. 272, 11 A.2d 299 (1940); *Childress v. State,* 133 Tenn. 121, 179 S.W. 643 (1915); State ex rel. *Roberts v. Johnson,* 196 Iowa 300, 194 N.W. 202, 203 (1923).

Strangely a number of cases have held that delinquency proceedings in a Juvenile Court do not bar, on the ground of double jeopardy, subsequent prosecution of the juvenile in an ordinary criminal court involving the same acts. *People v. Silverstein,* 121 Cal.App.2d 140, 262 P.2d 656 (1953); In re Santillanes, 47 N.M. 140, 138 P.2d 503, 510 (1943); *Moquin v. State,* 216 Md. 524, 140 A.2d 914, 918 (1958). However, Judge Alexander Holtzoff of the United States District Court, District of Columbia, reached a contrary conclusion in *United States v. Dickerson,* D.C., 168 F. Supp. 899 (1958).

It seems too that the majority of courts have held that the privilege against self-incrimination is not applicable in delinquency proceedings in those courts which treat juveniles as delinquents and not as criminals and, therefore, such court may freely interrogate the juvenile and base its ultimate decision upon the results of that interrogation. In re Mont., 175 Pa. Super. 150, 103 A.2d 460, 463 (1964); In re Holmes, 379 Pa. 599, 109 A.2d 523, 525 (1954)[8]; *People v. Lewis,* 260 N.Y. 171, 183 N.E. 353, 354 (1932) Annotation 86 A. L.R. 1009; In re Dargo, 81 Cal. App.2d 205, 183 P.2d 282, 284 (1947). On the other hand, in the following cases the privilege has been held to be applicable: *Dendy v. Wilson,* 142 Tex. 460, 179 S.W.2d 269 (1949), Annotation 151 A.L.R. 1229; Ex parte Tahbel, 46 Cal. App. 755, 189 P. 804, 806 (1920) and *State v. Cronin,* post.

Notwithstanding the great number of decisions holding specific

---

[8]See dissent of Mr. Justice Musmanno, 109 A.2d 528.

procedural constitutional guarantees to be not applicable in Juvenile Court proceedings, a number of cases have held that a juvenile is entitled to fundamental due process of law; among these are: In re Alexander, 152 Cal. App.2d 458, 313 P.2d 182, 184 (1957); In re Contreras, 109 Cal. App. 2d 787, 241 P.2d 631, 633 (1952); *Brewer v. Commonwealth,* (Ky.) 283 S.W. 2d 702, 703 (1955); *Cullins v. Williams,* 156 Ky. 57, 160 S.W. 733, 734 (1913). This was a suit in prohibition, where no complaint was filed, a process issued, or hearing held. The so-called Juvenile Court Judge having entered the order on so-called delinquent child without compliance with such safeguards, the Kentucky Court of Appeals issued order of Prohibition.

Statutes dealing with juveniles almost uniformly provide that the public shall not be admitted to delinquency hearings. The courts have quite consistently held that the constitutional requirement of a speedy and public trial is not applicable. In re Mont., 175 Pa. Super. 150, 103 A.2d 460, 463 (1954); *State v. Cronin,* 220 La. 233, 56 So.2d 242, 245, held a public trial is not required (1951); Ex parte Sharp, 15 Idaho 120, 96 P. 563, 18 L.R.A., N.S., 886 (1908).

Questions frequently arise regarding the admissibility of hearsay evidence in delinquency proceedings and the taking of testimony in the absence of the juvenile. Title 10 *Del. C.* Sec. 982, apparently authorizes the Family Court to conduct the hearing in an informal manner. Similar provisions are found in all such statutes. The use of hearsay evidence in the form of reports of probation officers and otherwise has been sanctioned in many decisions. In re Holmes, 379 Pa. 599, 109 A.2d 523, 526 (1954). The cases are collected in 43 A.L.R.2d 1128 at page 1141. Notwithstanding the recognized rule that hearsay evidence is freely admissible in delinquency proceedings, there are many cases reversing findings of delinquency because they were supported solely by hearsay. In re Sippy, 97 A.2d 455 (Mun. Ct. App. D.C. 1953); *People v. Fitzgerald,* 244 N.Y. 307, 155 N.E. 584, 588 (1927); In re Mantell, 157 Neb. 900, 62 N. W.2d 308, 312, 43 A.L.R.2d 1122 (1954). Wigmore (3rd Ed., Sec. 1400) criticizes the practice of hearing testimony in the absence of the juvenile.

The majority of the courts have concluded that a juvenile involved in delinquency proceedings has no constitutional right to bail. In re Magnuson, 110 Cal. App.2d 73, 242 P.2d 362 (1952); *Epinosa v. Rice*, 144 Tex. 121, 188 S.W.2d 576, 160 A.L.R. 284 (1945); Ex parte Newkosky, 94 N.J.L. 314, 116 A. 716; State ex rel. *Gray v. Webster*, 122 Wash. 526, 211 P. 274 (1922); *State v. Clark*, 186 La. 655, 173 So. 137 (1937). The latter case was distinguished in *State v. Franklin*, 202 La. 439, 12 So.2d 211 (1943), in which it was held that a delinquent child does have a constitutional right to bail. The cases are collected in an annotation in 160 A.L.R. 287.

The Court of Appeals of the District of Columbia has construed the Juvenile Court Act of the District of Columbia as expressly recognizing that a child has a right to counsel in a delinquency proceeding. *Shioutakon v. District of Columbia*, 98 U.S. App. D.C. 371, 236 F.2d 666, 60 A.L.R.2d 686 (1956). A Federal District Court Judge had previously reached the same conclusion. *In re Poff*, D.C., 135 F. Supp. 224 (1955). It was held in *In re Sippy*, D.C. Mun. App., 97 A.2d 455 (1953) that if a defendant appears with counsel of his own choice, a court treating juveniles cannot assign another counsel to the juvenile. It is to be noted that the Court of Appeals for the District of Columbia, *Dooling v. Overholser*, 100 U.S. App. D.C. 247, 243 F.2d 825, 827 (1957) has ruled an incompetent person involved in a proceeding to commit to a mental hospital has the right of counsel. On the other hand, *People ex rel. Weber v. Fifield*, *136* Cal. App.2d 741, 289 P.2d 303 (1955) and *Ex parte McDermott*, 77 Cal. App. 109, 246 P. 89 (1926), held that there was no constitutional right to counsel. The decisions in California were summarized in *People v. Dotson*, 46 Cal.2d 891, 299 P.2d 875 (Sup.Ct.1956), as follows:

"* * *. The fact that a minor is not represented by counsel need not be a denial of due process in [the] Juvenile Court [proceedings] . * * *. It is only when by such lack of representation of the minor undue advantage is taken of him or he is otherwise accorded unfair treatment resulting in a deprivation of his rights that it can be said he has been denied due process of law."

■ Since our Family Court Statute requires a hearing on the question of transfer of jurisdiction of a juvenile delinquent to the prosecutive process of this court and the reaching of a judgment on the issue by a Judge of the Family Court, and also vests the Family Court with power to commit a child "until he becomes twenty-one years of age," it is the opinion of this court that unless the juvenile has counsel at such a hearing "he has been denied due process of law," and I so hold. See *United States v. Morales,* [9] 233 F. Supp. 160, 165 (D.C. Mont. 1964).

■ Since, as was heretofore noted, supra, p. 7, no hearings were conducted in the Family Court, as required by 11 *Del. C.* Secs. 2711 and 2712, the motions to dismiss the indictments are granted and the cases involving defendants Richardson and Young are remanded to the Family Court for further proceedings in conformity with this decision. An order to this effect may be submitted, but it should provide for continuing the defendants Richardson and Young on bail, pending the holding of proper hearings by the Family Court and a determination by that court as to further prosecution of those juveniles.

----

[9]The question of constitutional guarantees and their relation to courts treating minors as delinquents is considered in "Constitutional Rights in Juvenile Court" 46 A.B.A. Journal 1206 (1960) and in 15 Juvenile Court Judges Journal, p. 1, in an article entitled "Should a Right to Assigned Counsel be Established in Juvenile Court Proceedings?"