[Crim. No. 4566. Second Dist., Div. One. Apr. 23, 1951.]

In re JUDITH ANN RAUCH, a Minor. SUPERIOR COURT OF LOS ANGELES COUNTY et al., Respondents, v. LOUIE M. RAUCH, Appellant.

Edward L. Butterworth for Appellant.

Fred N. Howser, Attorney General, and Landon Morris for Respondents.

WHITE, P. J.—This is an appeal by Louie M. Rauch, father of a minor child, Judith Ann Rauch, from an order of the superior court sitting as a juvenile court, declaring said minor child to be a ward thereof.

Ruth Calhoun Rauch, the mother of the child, died in October, 1948. Prior to her death she had petitioned the superior court to appoint her brother, Bernard P. Calhoun, and his wife, Patricia Calhoun, as guardians of the person of the child, which petition was granted. In December, 1948, a petition by the father to revoke the letters of guardianship was denied. In June, 1950, a second petition to set aside the order granting letters of guardianship and to revoke such letters was filed by the father, and a citation was issued requiring the guardians to appear on July 14, 1950, to show cause why such petition should not be granted. Notice of the citation was served upon Patrick L. Palace, Chief of the Juvenile Division of the Probation Department of Los Angeles County. The last-named official thereupon filed a petition with the juvenile court praying that the minor be declared a ward of the juvenile court. Following a hearing upon this petition, the court made its order declaring the child, Judith Ann Rauch, a ward of the court under subdivision (b) of section 700 of the Juvenile Court Law. (Welf. & Inst. Code, § 700.) It was further ordered that said minor be "placed

in the custody of our probation officer, to remain in the home of the maternal uncle and aunt, Mr. and Mrs. Calhoun . . . pending the adjudication of the Probate Court action.'' The matter was then continued for further hearing. From this order the minor's father prosecutes this appeal.

A motion was made to dismiss this appeal upon the ground that appellant, the minor child's father, not being her guardian or entitled to her custody, was not a party aggrieved by the order appealed from. The motion was denied by this court without prejudice to its renewal in respondents' brief.

It is contended by appellant that the petition on its face discloses that the juvenile court is without jurisdiction, in that the facts alleged do not show the minor to be a person defined by subdivision (b) of section 700 of the Juvenile Court Law (Welf. & Inst. Code, § 700); that the facts brought out at the hearing do not show the minor to be a person defined in said subdivision; and that the evidence presented does not support the allegations of the petition.

Section 700 of the Juvenile Court Law (Welf. & Inst. Code, ch. 2, art. 6), provides, so far as here pertinent, that the jurisdiction of the juvenile court extends to any person under the age of 21 years who comes within any of the following descriptions:

''. . . (b) Who has no parent or guardian; or who has no parent or guardian willing to exercise or capable of exercising proper parental control; or who has no parent or guardian actually exercising such proper parental control, and who is in need of such control. . . .''

.    .    .    .    .    .    .    .    .    .    .    .    .    .

In the petition filed in the within cause it was alleged that the minor child, seven years of age, ''is a person defined in subdivision (b) of section 700 . . ., in that:

''Said minor, Judith Ann Rauch, has no parent exercising proper parental control and she is in need of same in that minor's father left her without provision, care, and support since on or about November 1, 1945. Minor's mother died on or about October 28, 1948. Bernard Calhoun, maternal uncle, was appointed minor's legal guardian in Superior Court of this County. Said minor's guardian, Bernard Calhoun, and minor's father Louis Martin Rauch are not in agreement as to the best interests and welfare of said minor and protection of the Court is sought.''

The record reveals that Bernard Calhoun, one of the guardians, called as a witness by appellant father, testified

that the child had been living with her guardians since about August, 1948; that the guardians had provided her with housing, food and clothing, sending her to school, furnishing music lessons, and providing adequate medical care; that she seemed to be happy and contented, but that she was aware of the conflict between her father and the guardians.

Under examination by the attorney for appellant the witness further testified:

"Q. And are you exercising normal parental control over Judith Ann Rauch? A. Yes, with this exception, Mr. Butterworth; that in view of all the conflicting—it is very—it has a very bad effect on the little girl.

"Q. . . . Are you able to control the child, Mr. Calhoun? A. Well, we can't control her when the father comes out there. Q. He comes out once every two weeks, is that right? A. Yes, sir. Q. And he sees her for one hour? A. Yes, and she doesn't even want to stay with him. I have to go and see where she is. Q. Other than that she would be leading the life of a normal child? A. No, these visits upset her, Mr. Butterworth, following his visits. She has been upset now ever since Mrs. Owens interviewed her about this hearing this morning, it has a very bad effect on the child."

The father of the minor child testified that he was employed, owned his own home and was willing to take and assume the care, support and parental control of the child; that he loved the child. He was asked how much money he had paid for the support of the child during the year 1950, but an objection to the question was sustained.

It further appeared from the colloquy between respective counsel and the court that while the probate court had previously denied the father's petition to set aside the guardianship, that court had not found the father to be an unfit person, but only that he was not a fit and proper person at the time the petition was denied. The probate court further found that the father had not abandoned the child. It further appears that the guardians had filed a petition to have the child declared an abandoned child, and had also sought to adopt the child.

We shall first give consideration to respondent's contention that the appeal should be dismissed on the ground that the father of the minor is not affected or aggrieved by the order appealed from, nor would its reversal restore him any rights of which he is now deprived.

■ To say that the father of a child is not "affected or aggrieved" by an order declaring such child a ward of the juvenile court is to do violence to the American philosophy and system of government, in which the alien philosophy that the child is the creature of the state finds no countenance. Under the American way of life, the child belongs to the family, and any judicial proceeding which seeks to impair or take away a father's parental authority is certainly litigation, in the subject matter of which such father is interested, and, therefore, brings him within the fundamental rule of appellate jurisdiction that "under our decisions any person having an interest recognized by law in the subject matter of the judgment, which interest is injuriously affected by the judgment, is a party aggrieved and entitled to be heard upon appeal." (*Estate of Colton*, 164 Cal. 1, 5 [127 P. 643].)

■ While it is true that the authority of a parent ceases upon the appointment of a guardian of the person of a child (Civ. Code, § 204; Prob. Code, § 1500), nevertheless, we are not disposed to hold that such suspension of parental authority divests a natural father of a substantial interest in a proceeding initiated by an officer of the juvenile division of a county probation department to have his minor child declared a ward of the juvenile court.

■ It is true, as contended by respondents, that should this court reverse the order appealed from the minor would remain in the custody of respondents as her guardians, but that is so only because, after the juvenile court declared the child a ward thereof, the court made an order directing that the child reside with such guardians. Should the order be affirmed, the juvenile court would be empowered to change such custody, and in the event of affirmance of the order now under consideration, even though the probate court should for good cause, revoke the letters of guardianship, the father could not have the custody or control of his child except upon order of the juvenile court. Such a situation is indeed one in which a natural father is affected and, legally speaking, an aggrieved party.

Prior to the making of the order now before us, the minor was a ward of respondents as guardians duly appointed by the probate court, and, as such, in their custody. Now, as far as this litigation is concerned, the minor is no longer a ward of respondents, but a ward of the juvenile court, and in the custody of the respondents only by reason of the order of said court. In other words, the action of the juvenile

court, if it be held that it supersedes the prior action of the probate court, has altered the status of the minor from that of a ward of private guardians to that of a ward of the juvenile court. As a consequence of the instant action appellant, father of the minor, has had an additional obstacle placed in his path insofar as the recovery of his child is concerned. Before the juvenile court entered upon the scene, appellant could have recovered the care and custody of his child as the result of a single successful petition to the probate court. If the action of the juvenile court herein is sustained, appellant must not only petition the probate court successfully, but the juvenile court as well, before he can regain custody of his daughter. Manifestly, this result of the order herein has injuriously affected his rights and interest in his child. The motion to dismiss the appeal must therefore be denied.

■ Appellant earnestly urges that the facts elicited at the hearing of the petition herein, are insufficient to establish the fact that the minor is a person defined in subdivision (b) of section 700 of the Juvenile Court Law. We are satisfied the evidence is insufficient.

Save and except for the testimony of Mr. Calhoun, one of the minor's guardians, that the child was "aware of all this conflict between her father and myself," and that the child was "upset" following visits by her father, there is no testimony in the record other than that the guardians were providing the minor with a good home, proper food and clothing, an education, including music lessons; that adequate medical care was provided and that the child appeared to be happy and contented, except as heretofore pointed out, on the occasions when her father visited her. The juvenile court made no finding that the guardians were not actually exercising proper parental control, nor would any such finding be justified by the evidence. The only finding made is contained in the statement of the court as follows:

"The court at this time is going to declare the youngster a ward of the court under subdivision (b) of section 700, feeling that the youngster does need some protection in view of the multiplicity of suits involved here. I will make an order she be placed in the custody of our probation officer, to remain in the home of the maternal uncle and aunt, Mr. and Mrs. Calhoun, at 3369 Laurel Canyon Boulevard, North Hollywood, pending adjudication of the Probate Court action."

We find nothing in section 700 (b), or for that matter, anywhere in the Juvenile Court Law extending the jurisdiction of the juvenile court to a minor simply because such minor is involved in other pending litigation. Indeed, if such were the case, we might find the juvenile court injecting itself into actions for divorce, separate maintenance or appointment of guardians, where the custody of a minor was involved. No citation of authority is necessary for the statement that no such jurisdiction of the juvenile court was ever intended in enacting the legislation establishing it.

We are unable to find in the record before us any substantial evidence that the minor's guardians were incapable of exercising proper parental control over the child or that they had failed to do so.

It is manifest that the personal differences between the guardians and the father of the minor—not the welfare of the child—were the moving cause of the proceeding. The purpose of the Juvenile Court Law is not the adjustment of parental disputes between a parent and duly appointed guardians of a minor as in the instant case. These matters, insofar as the case now before us is concerned, are to be settled in the guardianship proceedings where the guardians and the parent are the actual parties (*People ex rel. Jones* v. *Savage,* 44 Cal.App. 2d 670, 677 [112 P.2d 892]).

The foregoing conclusion at which we have arrived makes it unnecessary to discuss or decide other points raised.

Notwithstanding we are fully satisfied that the motives actuating the juvenile court may be praiseworthy, we are convinced that neither the law nor the facts in the case now under review justified the order appealed from.

The motion to dismiss the appeal is denied. The order appealed from is reversed with directions to grant appellant's motion to dismiss the proceeding.

Drapeau, J., and Hanson, J. pro tem., concurred.