[Crim. No. 4700. Second Dist., Div. One. Mar. 18, 1952.]

In re LUPE CARDENAS CONTRERAS, a Minor.

Ibanez & Snider and Richard A. Ibanez for Appellant.

No appearance for Respondent.

WHITE, P. J.—This is an appeal by the above named minor and his mother, Maria Luisa Contreras, from an order of the superior court sitting in separate session as a juvenile court, declaring the aforesaid minor a ward thereof and committing him to the Youth Authority of the State of California and denying a motion to vacate and set aside the aforesaid order.

The original order declared said minor to be a person coming within the provisions of section 700m of the Welfare and Institutions Code in that, on March 19, 1951, he "committed an assault upon the person of Henry Davila with a deadly weapon or instrument or by means of force likely to produce great bodily injury."

The findings and judgment set forth that the alleged assault was committed in the following manner: "Minor participated in a gang fight, accompanied with other minors, in which said victim received a stab wound in the stomach inflicted by sharp-edged instrument, and also received several abrasions about the face and head as a result of being kicked and beaten."

After finding "that minor's welfare requires that his custody be taken from his mother," the judgment directed that said minor be committed to the Youth Authority of the State of California.

On this appeal it is contended that the evidence fails to support the judgment declaring the minor herein a ward of the juvenile court and committing him to the Youth Authority.

The record reflects that in this proceeding five boys, including the minor Lupe Cardenas Contreras, were charged with engaging in a "gang" fight during the course of which one Henry Davila was stabbed with a knife and otherwise set upon and beaten.

It appears that at the hearing in the juvenile court, proceedings were first had as to Salvadore Gill, one of the boys accused with the minor herein. These proceedings were had outside the presence of the minor with whom we are here concerned. Gill gave no testimony involving Contreras, whereupon the mother of the former, and Probate Officer Sorkin advised the court that the witness was "afraid" and "reluctant" to testify. The judge then said to the minor Gill, "I am not going to tell any of these boys I got any information out of you. You don't need to worry about that. You can tell us anything you want to tell us. I also want you to know we already know what you told the officers, but we are not going to tell the rest of the boys that you told us anything. We are interested in finding out all we can about this matter so we can make sure we have the right guy and not the wrong fellows are accused in this difficulty. Let's get the record straight."

With these assurances, the witness continued but did not incriminate Contreras. Officer McAuliffe, however, testified that the witness Gill had theretofore told him, "He thought if anybody stabbed Davila, it was Contreras." Producing a miniature baseball bat, the officer further testified, "When Contreras was arrested . . . he had this . . . I believe it was Salvadore (Gill) who saw somebody with something like this." Gill denied making this statement.

 Contreras, the minor herein, denied any participation in the fracas, stating that on the night in question he was riding in an automobile with two boys, Richard Marques and Frank Chavez. Both of these boys corroborated this statement but admitted having told Probation Officer Sorkin to the contrary, contending that they did so because of threats made against them by other boys.

Henry Davila, victim of the assault, testified that eight or nine boys "jumped" on him as he was on his way to a drugstore. Salvadore Gill was the only one the victim recognized. With reference to the minor herein, the victim testified, "I know him by looks and everything, *but I didn't see him that night. Maybe he was there, and maybe he was not; I don't know.*" (Italics added.)

Following this testimony Officer McAuliffe testified that the victim had previously told him, "I think Contreras (the minor herein) cut me, he was the one who used the knife . . . it was Contreras who was on top of me, I am pretty sure that he is the one that used the knife . . . I'll get them when I get out." The officer also testified that "anyone that was mentioned by anybody was apprehended."

Section 736 of the Welfare and Institutions Code provides than "An order adjudging a person to be a ward of the juvenile court shall not be deemed to be a conviction of crime." In consonance therewith it has been held that issues presented to the juvenile court may be determined upon the preponderance of the evidence (*Matter of Cannon,* 27 Cal.App. 549, 553 [150 P. 794]). In the instant proceeding the minor was not represented by counsel upon the hearing at which he was adjudged a ward of the court. A reading of the transcript of the testimony taken immediately suggests the probability that had the minor been represented by counsel considerable of the evidence given would have been excluded through timely objections.

While the juvenile court law provides that adjudication of a minor to be a ward of the court shall not be deemed to be a conviction of crime, nevertheless, for all practical purposes, this is a legal fiction, presenting a challenge to credulity and doing violence to reason. Courts cannot and will not shut their eyes and ears to everyday contemporary happenings.

It is common knowledge that such an adjudication when based upon a charge of committing an act that amounts to a felony, is a blight upon the character of and is a serious impediment to the future of such minor. Let him attempt to

enter the armed services of his country or obtain a position of honor and trust and he is immediately confronted with his juvenile court record. And further, as in this case, the minor is taken from his family, deprived of his liberty and confined in a state institution. True, the design of the Juvenile Court Act is intended to be salutary, and every effort should be made to further its legitimate purpose, but never should it be made an instrument for the denial to a minor of a constitutional right or of a guarantee afforded by law to an adult. Regardless of the provisions of section 736 of the Welfare and Institutions Code, the fact remains that the minor herein was taken from the custody of his parents, deprived of his liberty and ordered confined in a state institution.

As was said in *In re Hill*, 78 Cal.App. 23, 27 [247 P. 591], with reference to proceedings in the juvenile court: "And so, while the exact truth should be searched out and all mere technicalities of procedure as distinguished from the rules which protect substantial rights should be disregarded, the regular processes of the law provided to produce evidence, and the ordinary rules established to aid courts in testing and weighing it, are not scrapped because the proceeding is a summary one." In the instant case there can be no doubt that had the minor herein been an adult, an indictment or information filed against him, under the evidence here present, would have been set aside on motion under section 995 of the Penal Code.

Surely, a minor charged in the juvenile court with acts denounced by law as a felony does not have lesser constitutional, statutory rights or guarantees than are afforded an adult under similar circumstances in the superior court. The record herein is barren of sufficient legal evidence to establish even reasonable or probable cause of the minor's guilt, and he should have been returned to his family, an institution that has ever been recognized as the foundation of society, and the sanctity of which the law has always upheld. A charge against a minor resulting in his removal from the custody of his parents cannot be regarded lightly, and such action is not justified unless facts be shown by evidence, the verity of which has been carefully and legally tested. We find nothing in the juvenile court law that attempts to impose any unlawful restraint upon personal liberty. In practically all of the cases affecting juvenile court proceedings that have come to our attention, the minor has admitted the charge lodged against him and the only problem presented to the court

was how to best guide and control the minor with a view to his rehabilitation and further development. In the case at bar however, the minor emphatically and at all times denied his alleged delinquency. Under such circumstances his liberty should not be taken from his until his guilt of the charges lodged against him was established by legal evidence. That however praiseworthy, according to the viewpoint of the individual, may be the motives of the juvenile court, that tribunal may not impinge upon the legal rights of one brought before it is emphatically set forth in *In re Tahbel,* 46 Cal.App. 755, 760, 761, 762, 763 [189 P. 804] ; In *In re Hill, supra,* pp. 26, 27, 28; and in *In re Rauch,* 103 Cal.App.2d 690, 698 [230 P.2d 115]. In the final analysis the juvenile court is a judicial institution.

If it be true, as some of the hearsay and legally inadmissible evidence indicates, that the minor herein may have been connected .with the ''gang'' fight in question, and possibly unfortunate that a rehearing should be required, nevertheless, consequences fraught with far greater evil would inevitably result from the sanction of individual abuses of the character here presented.

Even though, as held in some of the cases, the quantum of proof necessary to sustain an order declaring a minor a ward of the juvenile court is not the same as in a criminal proceeding affecting an adult (*In re Dargo,* 81 Cal.App.2d 205 [183 P.2d 282], and cases therein cited), it cannot seriously be contended that the constitutional guarantee of due process of law does not extend to minors as well as to adults.

When the motion to set aside the order committing the minor to the Youth Authority was made, several letters were presented attesting to his good character and reputation. These letters have been brought here on this appeal. One from the principal of the school attended by the minor stated in part, ''My principal contact with Lupe was on the playground during noon and after-school hours. Here he always exhibited good sportsmanship, good judgment and self control. He was honest and fair in all his dealings with fellow players, and was liked and respected by everyone. He showed definite leadership qualities and I confidently anticipated a successful future for the lad.

''I had a liking for Lupe and am very much surprised and concerned that he is involved in any kind of trouble.''

Another letter from the school vice-principal contained the following: ''Lupe's disciplinary record in my office shows

that he had been sent in for minor class room disturbances only twice during the year and one half he was here.

"The following statements from two of his teachers may also be significant as to Lupe's true character:

" 'Not a bad kid—worked well for me. He lacks initiative and followed the wrong crowd.' Phys. Ed. Teacher.

" 'Not a disciplinary case, but just not much work.' English Teacher.

"On the whole, I would say that we did not find Lupe to be a disciplinary problem at Garfield High School. I hope this letter may be of some value in helping Lupe."

Other similar and complimentary letters were written by a former teacher of the minor as well as by neighbors of his family.

We are persuaded that in denying the motion to vacate and set aside its order committing the minor herein to the Youth Authority of the State of California, the juvenile court abused its discretion. The motion should have been granted thereby enabling said minor, with the aid of counsel, to properly prepare and present a defense to the charges preferred against him.

For the foregoing reasons, the order of June 7, 1951, denying the motion to vacate and set aside the previous order declaring said minor a ward of the juvenile court and committing him to the Youth Authority of the State of California is reversed and the cause remanded with directions to the court below sitting in separate session as a juvenile court, to grant said motion.

Doran, J., and Drapeau, J., concurred.