267 Cal.App.2d 329 (1968)
In re M.G.S., a Person Coming Under the Juvenile Court Law. THE PEOPLE, Plaintiff and Respondent,
v.
M.G.S., Defendant and Appellant.
Crim. No. 14544. 
California Court of Appeals. Second Dist., Div. Five. 
Nov. 12, 1968.
 Albert I. Kaufman, under appointment by the Court of Appeal, for Defendant and Appellant.
 Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Andrea Sheridan Ordin, Deputy Attorney General, for Plaintiff and Respondent.
 DRUCKER, J. pro tem. [fn. *]
 This is an appeal by M.G.S., a minor, from a judgment of the juvenile court declaring him to be a ward of the court, and from the order committing him to the youth authority. The primary contention of the appellant is that he was deprived of his constitutional right to effective aid of counsel, in that, his attorney failed to offer into evidence psychiatric reports to show that at the time of the commission of the felony offenses alleged in the petition, he was legally insane, and that the court erred in accepting an admission from the minor's counsel.
 M.G.S. came before the juvenile court in April 1966. At that time he was declared not a fit subject for consideration of the juvenile court. It was ordered that he be prosecuted under the general law. Two informations were filed in the superior court, one charging the minor with the offense of robbery alleged to have been committed on March 15, 1966, and the other with the offense of discharging a firearm at an inhabited dwelling. To each of these charges the minor entered a plea of not guilty and not guilty by reason of insanity. Two of three psychiatrists appointed pursuant to section 1027 of the Penal *332 Code were of the opinion that the minor was legally insane at the time of the commission of the offenses, and also "presently insane."
 The third psychiatrist stated that in his opinion the minor was sane at the time of the commission of the alleged offenses, and that he was able to stand trial. The court declared a doubt as to the minor's present sanity, pursuant to section 1368 of the Penal Code. Criminal proceedings were adjourned and the minor ordered committed to Atascadero State Hospital on July 22, 1966. Thereafter, on October 13th the Atascadero medical staff certified that the minor was then able to understand the nature of the charges against him and could cooperate rationally with his attorney in his defense. The minor was returned to the jurisdiction of the superior court in custody of the jailer, and his case was reset for trial. However, on November 18, 1966, before the date set for trial, the minor filed a motion to dismiss the proceedings on the ground that at the juvenile court proceedings, in which he was declared unfit, he was denied his right to counsel. The superior court certified the case to the juvenile court, and the motion for dismissal was withdrawn.
 On November 23, 1966, a petition was filed in the juvenile court alleging that the minor comes within the provisions of section 602 of the Welfare and Institutions Code, and setting forth the charges contained in the informations filed in the superior court. On November 25, 1966, a psychiatric clinic report to the juvenile court disclosed that the minor was suffering from "schizophrenic reaction, chronic paranoid acute exacerbation," with a recommendation for immediate transfer to the psychiatric unit of the county general hospital for emergency hospitalization. The juvenile court directed the mental health counselor to file a petition of mental illness, appointed the public defender to represent the minor, and continued the hearings until December 8, 1966, for adjudication of the mental illness and juvenile court petitions. On December 8, 1966, the minor was ordered committed to Camarillo State Hospital on the mental illness petition. The juvenile court, unable to adjudicate the juvenile petition by reason of the mental condition of the minor, continued the hearing on the petition until the minor was released from Camarillo State Hospital.
 Upon notification from Camarillo Hospital that the minor was competent to participate in the proceedings, the juvenile court set a hearing on the petition for February 16, 1967. On *333 that date the hearing was postponed to February 24, 1967 "for appearance of the Public Defender."
 The hearing on the petition was held on February 24, 1967, before the referee of juvenile court. After the determination of the matter of service of the petition and notice of hearing, the following proceedings took place:
 "The Referee: The minor is represented by [minor's counsel]. The minor is not required to testify and need not say anything if he does not want to do so. Counsel, is there an admission or denial as to Paragraph I which alleges the robbery?"
 "[Minor's Counsel]: We ask the Court to consider the following, Your Honor: That the minor admit to Paragraph I, and that the Court consider dismissing Paragraph II in the interest of justice."
 "The Referee: And specifically the interests of justice are what?"
 "[Minor's Counsel]: Well, Your Honor, as I mentioned to the Court, it is apparent from the psychiatric evaluation of the minor and from the testimony at the Preliminary Hearing, at least during the involvement of that 246, that the boy was, at best, very emotionally disturbed. I do not think anything would be gained by charging and, in effect, convicting him of that offense. ..."
 "The Referee: Counsel, you indicated that the minor was mentally ill at this time."
 "[Minor's Counsel]: Well, Your Honor, there is, of course, no adjudication to the issue, but the minor has been examined, I think, three or four--by three or four psychiatrists, and two of whom said that when they examined him in Superior Court, he was presently insane and insane at the time of the commission of the offense."
 "The Referee: This is February 6th. This is the shotgun incident?"
 "[Minor's Counsel]: They have not really pinpointed it, Your Honor. I think that the conduct of the minor on or at that general time lead [sic] them to believe that at least in this area he was under that mental difficulty."
 "The Referee: The Court will grant counsel's motion as to Paragraph II. Paragraph I will be found to be true. Based on the admission, Paragraph II will be ordered dismissed."
 "[Minor's Counsel]: Thank you, Your Honor."
 "The Referee: Mr. Higginbotham, when can a Probation *334 Officer's report and social study and recommendation be made available to the Court?"
 "Mr. Higginbotham: Ordinarily the time is two weeks."
 "The Referee: Well, I am not concerned with ordinarily."
 "Mr. Higginbotham: We can make an attempt to have the proper inquiries and investigations made and prepare a social study and recommendation for this afternoon if the case can be continued until the P.M. calendar."
 "The Referee: This is a relatively recent report on the minor. This is a report dated 12-22-66, and this was prepared by the field officer, Whetcroft. So, it would be a matter of primarily bringing it up to date."
 "Mr. Higginbotham: Yes, sir. That is correct."
 "The Referee: The matter will be continued for adjudication until 1:30 in the afternoon, I mean for disposition. The petition is found to be true as to Paragraph I and not true as to Paragraph II. The allegations of the petition are sustained. The certification from Department 117 in the Superior Court is accepted. The minor will remain in custody of the Sheriff of the County of Los Angeles pending the disposition hearing at 1:30 this afternoon."
 "(Wherein the above case was continued to 1:30 P.M.)"
 That afternoon the probation officer filed his report, dated February 24, 1967. It contained the following information: "Minor has been released from Camarillo State Hospital and is presently detained at County Jail. A letter received from Dr. Jack C. Borel, M.D., Camarillo State Hospital, indicates that he feels that the minor is competent to participate in these proceedings. He expresses the further belief that hospitalization will not be beneficial, and if further acting out behavior occurs, that such should be controlled in a structured, secure environment such as a correctional facility." The probation officer was of the opinion that the minor could not be safely returned to the community, and recommended that he be committed to the California Youth Authority.
 The deputy public defender, speaking on behalf of the minor advised the court that "He feels now that sending him to YA would just be penalizing him for engaging in conduct of which he was entirely unaware of at the time he did it. He was sick. There is no doubt about that." The minor was permitted to address the court. In his plea for probation he stated, "I don't even remember committing this robbery, ..."
 The minor was declared to be a ward of the juvenile court under section 602 of the Juvenile Court Law, and was ordered *335 committed to the California Youth Authority. The findings and order of the referee were approved by the judge of the juvenile court.
 The first point of contention that the appellant was deprived of his constitutional right to effective aid of counsel, poses a number of questions, more specifically, what is the role of an attorney in a juvenile court proceeding? Does counsel for the minor have the sole responsibility for eliciting evidence, in an informal proceeding, that concerns the jurisdiction of the court? Was it obligatory upon the juvenile court to have had the issue of insanity resolved when such issue was suggested by counsel informally, even though ineptly.
 Counsel for the minor asked the court to consider dismissing paragraph II of the petition for the reason that according to the testimony at the preliminary hearing, the minor was emotionally disturbed at the time of discharging a shotgun at an inhabited dwelling. When asked by the referee whether the minor was mentally ill at that time, counsel stated there was no adjudication of that issue but that the minor had been examined by three or four psychiatrists and two of them reported to the superior court that the minor "was presently insane and insane at the time of the commission of the offense." When asked by the referee whether the psychiatric opinion related to the shotgun incident, counsel's response was "they have not really pinpointed it, Your Honor" but thought that the psychiatric opinion at least related to this one offense.
 An examination of the superior court files containing the psychiatric reports [fn. 1] discloses that the psychiatric opinions referred to related to both offenses charged against the minor. Counsel for the minor did not adequately and properly present to the court information relating to the psychiatric opinions filed in the superior court, and in confining his suggestion for dismissal to the shotgun incident due to the minor's "mental difficulty," may have misled the court in considering the psychiatric opinions relevant only to the one offense.
 Respondent suggests that there is a serious question whether the essentials of due process and fair treatment require that the defense of legal insanity be available in juvenile court proceedings.
 [1] Due process of law is a requisite to the constitutional *336 validity of juvenile court proceedings in which alleged misconduct may result in a determination of delinquency and commitment to a state institution (Re Gault, 387 U.S. 1 [18 L.Ed.2d 527, 537-538, 87 S.Ct. 1428]; In re Butterfield, 253 Cal.App.2d 794, 797 [61 Cal.Rptr. 874]).
 [2] We see no reason why the defense of legal insanity should not be interposed in a juvenile court proceeding as it goes to the very essence of the jurisdiction of the juvenile court to declare a minor a ward of the court. A deprivation of the right to present such a defense violates the constitutional guarantee of due process of law, for were it not so, then, as appropriately stated in Kent v. United States (1966) 383 U.S. 541 [16 L.Ed.2d 84, 86 S.Ct. 1045] at page 94, "... [t]here may be grounds for concern that the child receives the worst of both worlds: that he gets neither the protections accorded to adults nor the solicitous care and regenerative treatment postulated for children." If the minor had been prosecuted under the general laws, and found guilty, he would have been entitled to a hearing on his plea of not guilty by reason of insanity to determine whether he was legally capable of committing the crimes. If he was found to have been legally insane at the time of having committed the crimes and had not fully recovered his sanity he would have then been committed to the Department of Mental Hygiene for care and treatment, and not to a correctional institution.
 The history of the minor discloses a previous admission to Atascadero State Hospital for observation and diagnosis, by order of the Youth Authority on July 1, 1965. The hospital's diagnosis: "schizophrenic reaction, schizo- affective type, with sociopathic features." The recommendation was commitment to Atascadero State Hospital. On November 16, 1965, minor appeared in department 95 of the juvenile court on a mental illness petition, and was committed to Camarillo State Hospital. The minor was on convalescent leave from Camarillo State Hospital when he was arrested for the offenses alleged in the petition. [fn. 2]
 Section 701 of the Welfare and Institutions Code provides that: "At the hearing, the court shall first consider only the question whether the minor is a person described by Sections 600, 601, or 602, and for this purpose, any matter or information relevant and material to the circumstances or acts which *337 are alleged to bring him within the jurisdiction of the juvenile court is admissible and may be received in evidence; however, a preponderance of evidence, legally admissible in the trial of criminal cases, must be adduced to support a finding that the minor is a person described by Section 602, ..." such person is "[a]ny person under the age of 21 years who violates any law ... defining crime ... is within the jurisdiction of the juvenile court, which may adjudge such person to be a ward of the court." (Welf. & Inst. Code, 602.)
 [3] The jurisdiction of the juvenile court in the case at bench depended upon the existence of facts from which the court could first determine whether the minor is a person described by section 602. Any relevant matter or information which supports a finding that the minor was legally incapable of committing the acts alleged in the petition because of insanity (Pen. Code, 26, subd. 3), ousts the juvenile court of jurisdiction to proceed further on the petition insofar as it relates to section 602. (State v. Ferrell (Tex.Civ.App. 1948) 209 S.W.2d 642; cf. In re Application of Tassey, 81 Cal.App. 287, 290-291 [253 P. 948].)
 [4] The policy of the State of California, in the conduct of juvenile court proceedings is that: "Except where there is a contested issue of fact or law, the proceedings shall be conducted in an informal nonadversary atmosphere. ..." (Welf. & Inst. Code, 680.)
 It was in this informal atmosphere, encouraged by statute, that counsel for the minor informed the referee of the psychiatric opinions of insanity, however he presented no evidence in relation thereto. The lawyer's role in the juvenile court appears to be in an evolutionary state, (Note, Juvenile Delinquents: The Police, State Courts, and Individualized Justice, 79 Harv.L.Rev. 775, 796-799), nevertheless, the issue of insanity was, as we have concluded, crucial to the determination of jurisdiction of the juvenile court [fn. 3] to deal with the minor under section 602. In People v. Welborn, 257 Cal.App.2d 513, 515 [65 Cal.Rptr. 8], the court held that the failure of defense counsel to offer in evidence at the guilt phase of the trial psychiatric evidence that the record shows was available was a factor in concluding that the defendant was deprived of his constitutional right to effective aid of counsel. If the point *338 were not so novel in juvenile proceedings we would have to hold that the failure of counsel to present evidence on the issue of insanity deprived the minor of his constitutional right to effective aid of counsel. As it is, we need not rest our decision on that ground.
 Appellant further contends that the court erred in accepting an admission from the minor's counsel.
 The action of the referee in finding the allegation of robbery as set forth in paragraph I of the petition, to be true, when there was no admission of such charge by the minor, personally, or any evidence introduced in support thereof, appears to add to the constitutional deficiency of this case. In this connection, counsel stated: "We ask the court to consider the following, Your Honor: That the minor admit to Paragraph I, and that the Court consider dismissing Paragraph II in the interest of justice." After ascertaining that the police officer and witnesses were present as to the offense mentioned in paragraph II, and colloquy between court and counsel relating to the psychiatric evaluation of the minor, the referee, without asking the minor if he admitted the matters set forth in paragraph I, and without hearing any testimony, made the following order: "The Court will grant counsel's motion as to Paragraph II.paragraph I will be found to be true. Based on the admission, Paragraph II will be ordered dismissed."
 [5] As was said in In re Matter of Hill, 78 Cal.App. 23, 27 [247 P. 591], with reference to proceedings in the juvenile court: "And so, while the exact truth should be searched out and all mere technicalities of procedure as distinguished from the rules which protect substantial rights should be disregarded, the regular processes of the law provided to produce evidence, and the ordinary rules established to aid courts in testing and weighing it, are not scrapped because the proceeding is a summary one." (In re Contreras, 109 Cal.App.2d 787, 790 [241 P.2d 631].)
 [6] "Even though, as held in some of the cases, the quantum of proof necessary to sustain an order declaring a minor a ward of the juvenile court is not the same as in a criminal proceeding affecting an adult (In re Dargo, 81 Cal.App.2d 205 [183 P.2d 282], ...), it cannot seriously be contended that the constitutional guarantee of due process of law does not extend to minors as well as to adults." (In re Contreras, supra, at p. 791.) "Surely, a minor charged in the juvenile court with acts denounced by law as a felony does not have lesser constitutional, statutory rights or guarantees than are *339 afforded an adult under similar circumstances in the superior court." (In re Contreras, supra, at p. 790.)
 [7] Since section 701 requires that 602 petitions be sustained on the basis of evidence legally admissible in the trial of a criminal case, we see no reason why the same standards set forth in section 1018 of the Penal Code requiring "unless otherwise provided by law every plea must be put in by the defendant himself in open court," should not be adhered to in the juvenile court proceedings, in order to preclude the necessity of introducing evidence. [8] "The purpose of the requirement that a plea be entered by defendant personally is to ensure that the plea is his own." (In re Martinez, 52 Cal.2d 808, 815 [345 P.2d 449].) [9] As stated in In re Patterson, 58 Cal.2d 848, 853 [27 Cal.Rptr. 10, 377 P.2d 74]: "It is likewise settled that the admission by a minor of the charges against him in open court is the equivalent of a plea of guilty and therefore raises no issue of fact and precludes the necessity for the presentation of evidence in support of the allegations contained in the petition. [Citations.]" It is stated in In re Mikkelsen, 226 Cal.App.2d 467, 473 [38 Cal.Rptr. 106]: "... it would be well for the record to clearly show that the petition was read to the minor as required by section 700, that the court explained the elements of the offense, and that the minor understood the court's explanation before being asked if the allegations of the petition were true."
 [10] The record before us shows that the minor did not personally admit the act alleged in paragraph I of the petition. If the suggestion made by his counsel to the referee that the minor admit paragraph I of the petition were to be regarded as entering an admission for the minor, the referee did not ascertain whether the minor authorized or adopted counsel's statement of his admission. In fact the minor said nothing during the adjudicatory portion of the proceedings. At the dispositional portion of the hearing, the minor did make a statement, the essence of which is reflected in the following paragraph: "I am not very good talking about it. I am sincere in what I am saying. I don't even remember committing this robbery [italics added], and now that I have been hospitalized and everything, went all through this detention and everything, I would like to ask the Court for any kind of conditional probation or report back here, any set date."
 Under the circumstances of this case, it was obligatory upon the referee to reject the purported admission. The referee's *340 finding that the petition was true as to paragraph I is not supported by the record; the court erred in failing to grant the minor's request for a rehearing.
 This appeal was filed under the erroneous title of a criminal case instead of a juvenile case, therefore, the title pertaining to this appeal is ordered corrected and now ordered designated as "In re M.G.S., a minor." [fn. 4]
 We believe that the contentions of the appellant are supported by the record and we find that the minor has been deprived of his constitutional right to due process of law.
 The judgment declaring the minor to be a ward of the juvenile court and the order committing him to the Youth Authority are reversed.
 Kaus, P. J., and Stephens, J., concurred.
NOTES
[fn. *] *. Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.
[fn. 1] 1. Appellant's request for augmentation of the record to include psychiatric reports filed in superior court cases was granted.
[fn. 2] 2. This information was obtained from the probation report of April 6, 1966, made part of the probation report of December 7, 1966, by reference, which is now part of the augmented record. There is no information whether the minor was committed to Atascadero State Hospital.
[fn. 3] 3. The juvenile court has jurisdiction to adjudge a minor to be a dependent child of the court "[w]ho is physically dangerous to the public because of a mental or physical deficiency, disorder or abnormality." (Welf. & Inst. Code, 600, subd. (c).)
[fn. 4] 4. Filing of an appeal under the initials of the minor is a logical extension of section 827 of the Welfare and Institutions Code providing for confidentiality of records of the juvenile court.